SOUTHERN RAILWAY COMPANY *v.* ARTHUR MAXWELL,
*Administrator.*

(*Knoxville.*    September Term, 1904.)

1. **PAUPER OATH.** Nonresident qualified here as personal representative may sue upon.

   A nonresident qualified in this State as the personal representative of a person dying in or leaving assets or property in this State may prosecute a suit in this State as such personal representative, on the pauper oath prescribed for personal representatives. (*Post, pp.* 468-473.)

   Code cited and construed:   Sec. 4928 (S.); sec. 3912 (M. & V.); sec. 3192 (T. & S. and 1858).

   Acts cited and construed:   1897, ch. 133; 1901, ch. 126; 1903, ch. 501.

   Case cited and approved: Lisenbee v. Holt, 1 Sneed, 42.

   Cases cited, distinguished and approved:   Smith v. Railroad, 89 Tenn., 664; Railroad v. Thompson, 109 Tenn., 343; Fawcett v. Railroad, 5 Cates, 246.

2. **STATUTES.** Repealed or amended by implication.

   A statute not reciting the title or substance of the act to be amended or repealed cannot be held good as a technical amendatory act, nor valid as a direct repealing act; but it may be treated as an independent act, and so it may, by implication, operate as a repeal of former acts with which it may be inconsistent, so far as inconsistent therewith. (*Post, p.* 471.)

   Constitution cited and construed:   Art. 2, sec. 17.

   Cases cited and approved:   Insurance Co. v. Taxing District, 4 Lea, 644; Zickler v. Bank & Trust Co., 104, Tenn., 227.

Railroad v. Maxwell.

3. **PERSONAL INJURIES.** Declaration for wrongful death, not alleging a widow, next of kin, or beneficiaries, states no cause of action.

A declaration in an action by a personal representative to recover damages for the wrongful death of the decedent, which fails to allege that there is a widow, next of kin, or beneficiaries, to take the recovery, states no cause of action. (*Post, p.* 473.)

Cases cited and approved: Railroad v. Pitt, 91 Tenn., 86; Love v. Railroad, 108 Tenn., 104.

4. **ARREST OF JUDGMENT.** After verdict for failure to state any cause of action.

Where the declaration, in an action by a personal representative to recover damages for the wrongful death of the decedent, states no cause of action, because of its failure to show that there is a widow, next of kin, or beneficiaries to take the recovery, the defect is not cured by the verdict, and may be taken advantage of by motion in arrest of judgment after verdict, though there was no demurrer for such defect. (*Post, pp.* 473-478.)

Cases cited and approved: Greer v. Bumpass, M. & Y., 94; State v. Aikin, 7 Yer., 268; Shelton v. Bruce, 9 Yer., 24; Knott v. Hicks, 2 Hum., 162; Sheppard v. Kindle, 3 Hum., 80; Baxter v. Erwin, 1 Tenn. Cas., 113, 115, Turnpike Co. v. Yates, 108 Tenn., 428-430.

5. **PLEADING AND PRACTICE.** Declaration defectively stating a good cause of action is aided by verdict.

A declaration which states a good cause of action, although defectively, will be aided by the verdict; for, where the omissions are not so serious or vital as to leave the declaration emasculated of the power to convey a cause of action, the court will presume, after verdict, that the missing matter was supplied by the evidence. (*Post, p.* 476.)

113 Tenn—30

Cases cited and approved: Anderson v. Read, 2 Ov. 205-208; Goodloe v. Potts, Cooke, 399; Stanley v. Brit, M. & Y., 222; Anderson v. Donelson, 1 Yer., 197-199; Shelby v. Hearne, 6 Yer., 512-514; Rogers v. Love, 2 Hum., 417-420; Woodson v. Moody, 4 Hum., 303-307; Brown v. Parks, 8 Hum., 294-297; Cannon v. Phillips, 2 Sneed, 191; Gas Co. v. Williamson, 9 Heis., 314; Morriss v. Bowers, 58 S. W., 328.

6. **SAME. Same.** Defective statement of a good cause of action is cured by verdict, but statement of no cause of action is not cured by verdict.

The rule that "if a pleading contains a defect, either in substance or form, which would have been fatal on demurrer, yet if, on trial, the issue requires proof of the fact so defectively stated or omitted, the defect is cured by the verdict," is perfectly sound and intelligible, when applied to the defective statement of a good cause of action; but when applied to statements which set forth no cause of action, is both unsound and unintelligible. (*Post, pp.* 476, 477.)

7. **SAME. Same. Same.** Omitted averments in declaration showing good cause of action defectively stated, supplied from the other pleadings.

Where the declaration shows a good cause of action defectively stated, if the omitted averments or facts are found in the pleas of the defendant, or are necessarily inferable from the pleadings taken in their entirety, they will be supplied to the declaration, and the judgment will not be arrested after verdict, but if there is no cause of action appearing in the pleadings, there is no lawful issue, and, therefore, no valid verdict. (*Post, pp.* 477, 478.)

Cases cited and approved: Mosley v. Matthews, Meigs, 578; Mayfield v. Beech, 2 Sneed, 443; Trabue v. Higden, 4 Cold., 620; Cherry v. Smith, 10 Heis., 389-392.

Railroad v. Maxwell.

8. **STATUTES.** Title or substance of law sought to be amended
   is not recited by reference to it in Shannon's Code or that of
   Milliken and Vertrees.

   A statute purporting to amend a certain section of Shannon's
   Compilation of the Statutes of Tennessee, or in Milliken and
   Vertrees' Compilation, is unconstitutional, because it does not
   recite the caption or substance of the act to be amended. ( *Post,*
   *pp.* 479, 480.)

   Code cited:   Secs. 3074-3076, 4025 (S.); sec. 3130 (M. & V.); sec.
   2291ᵖ (T. & S. and 1858).

   Constitution cited and construed: Art. 2, sec. 17.

   Cases cited and approved:  Burnett v. Turner, 87 Tenn., 129; Rail-
   road v. State, 110 Tenn., 598, 618.

   Acts cited and held unconstitutional:  1899, ch. 213; 1903, ch. 43.

9. **ARREST OF JUDGMENT.** Suit dismissed where motion in,
   is sustained by supreme court.

   Where the motion in arrest of judgment is sustained by the su-
   preme court, the suit will be dismissed with costs. ( *Post, p.*
   480.)

   Case cited and approved:  McMinnville v. Stroud, 109 Tenn., 569,
   571.


FROM WASHINGTON.


Appeal from the Law Court of Johnson City.—JESSE
L. ROGERS, Special Judge.

KIRKPATRICK, WILLIAMS & BOWMAN, for Railroad.

Railroad v. Maxwell.

S. E. Miller and Harr & Burrows, for Maxwell.

Mr. Justice Neil delivered the opinion of the Court.

This action was brought in the law court at Johnson City by the appellee to recover damages for the killing of his intestate, J. W. Ball, on the line of the railway company. There were verdict and judgment for $2,500 in favor of the appellee, from which the appellant company, after the overruling of a motion for a new trial, and also a motion in arrest of judgment, prayed an appeal to this court, and has here assigned three errors to the action of the court below.

In the view we take of this case, it will be necessary to consider only two of the errors assigned.

The first assignment necessitates a construction of chapter 501, page 1344, of the Acts of 1903.

The question made upon this act in the present case is whether a nonresident administrator of the estate of a person dying in this State, or leaving assets or property in the State, and appointed by the courts of this State, can prosecute a suit in this State on the pauper oath. The defendant in error is a citizen of the State of Virginia, but qualified as administrator here, and brought the present suit upon the pauper oath. In the court below, a motion was made to dismiss the suit on this ground, or for want of a prosecution bond, which motion was overruled by the court. To test the correctness of this ruling, the first assignment of error was filed.

In order to a proper understanding of this matter, it will be necessary to make a short review of previous legislation on the subject.

Section 4928 of Shannon's Code (section 3192 of the Code of 1858) provides that, except in suits brought for false imprisonment, malicious prosecution, slanderous words, and divorce suits brought by males, "any person" may commence an action on taking the oath prescribed for poor persons. This was held to apply to nonresidents as well as to residents in *Lisenbee* v. *Holt,* 1 Sneed, 42, but not to apply to administrators, either resident or nonresident, in *Smith* v. *Railway Company,* 89 Tenn., 664, 15 S. W., 842. Then chapter 133, page 313, Acts 1897, was passed, which provided that "any personal representative of the estate of any deceased person in this State" might prosecute suits upon the pauper oath. This was broad enough to cover both resident and nonresident administrators of the estates of persons dying in this State, qualified here. Then chapter 126, page 197, Acts 1901, was passed, which provided that no person "not a citizen or resident of the State of Tennessee" should be permitted to bring suits under the pauper oath. In *Southern Railway Company* v. *Thompson,* 109 Tenn., 343, 71 S. W., 820, this act was enforced against a plaintiff suing in his own right, and held to apply to pending suits. In *Fawcett* v. *Railway Co.* 5 Cates, 246, 81 S. W., 839, decided July 25, 1904, it was held that the act of 1901 applied to nonresident admin-

istrators, and prevented them from bringing suits upon the pauper oath.

In this state of the law, with the exception that the last-mentioned case had not then been decided, the act of 1903, above referred to, was passed. This reads as follows: "That whenever a nonresident of the State of Tennessee qualifies in this State as the executor or administrator of a person dying in or leaving assets or property in this State, that for the purpose of suing and being sued, he shall be treated as a citizen of this State, and in case it is desired by any citizen of this State to sue said administrator or executor in his official capacity for any debt or demand, due or owing to any citizen of this State, from his testator or intestate, that, in case of the inability of the officer in whose hands process is placed, to find said administrator or executor in this State, that notice of said suit, served upon the clerk of the county court of the county wherein said party qualified as administrator or executor, shall be sufficient notice to bring said administrator or executor before the court or justice issuing said process: provided, said clerk notify said executor or administrator of such notice served upon him by United States mail.

"That said nonresident of the State, qualifying as executor or administrator as aforesaid, shall give to the clerk of the county court of the county in which he qualifies, his address, and that a letter mailed to him at said address—unless subsequently changed and notice given

to said county court clerk—shall be sufficient notice, or to the changed address, as the case may be."

Acts 1903, p. 1344, c. 501.

At the date of the passage of this act, it appears, summarizing, that the state of the law was as follows, viz. :

That suits might be brought on the pauper oath in this State by any resident able to subscribe thereto, with the exceptions made in Shannon's Code, section 4928, whether suing in his own right or as the administrator of a decedent, but that no nonresident, whether suing in his own right or as administrator, could so institute an action.

Now the question to be determined is whether the act of 1903 was intended to change the law as it then stood, so as to grant to nonresident administrators or executors of the kind referred to in the act the right to sue under the pauper oath.

The act could not be held good as a technical amendatory act, because it does not comply with article 2, section 17, of the constitution, in that it does not recite the title or substance of the act to be amended; and for the same reason it could not be held valid as an act passed for the direct purpose of repealing a former act. But it may be treated as an independent act, and so may, by implication, operate as a repeal of former acts with which it may be inconsistent, so far as inconsistent therewith. *Home Ins. Co.* v. *Taxing Dist.,* 4 Lea, 644; *Zickler* v. *Union Bank & Trust Co.,* 104 Tenn., 227, 57 S. W., 341.

Treating the act, then, as an independent statute, yet construing it in the light of the law as it then stood, what meaning should it be held to bear in respect to the special aspect of the general question now presented to us?

Looking to the language of the act, we find its terms broad and general. It is said that, "for the purposes of suing and being sued, he [such nonresident "executor or administrator of a person dying in or leaving assets or property in this State"] shall be treated as a citizen of this State." There is no exception as to the form, methods, agencies, or privileges of suit. All are included. On what ground should the court introduce an exception? None is perceivable. Indeed, the act, on the point in question, seems to be in entire harmony with the purpose of the legislature, as evidenced by the act of 1901, to confine the privilege of suing under the oath to the people of this State, or to suits devoted to their interests, since the right is not extended to nonresident administrators generally, but only to those who have qualified in this State as the personal representative of persons dying or leaving assets or property in this State. It is said in the brief of counsel for the company that the purpose of the act was merely to subject the nonresident administrator or executor to the full control of our courts. That was one of the purposes, no doubt, but not the sole purpose. He was by the act subjected not only to the control of the courts of our State, but to their protection as well, and to the

use of such privileges as the law extends to litigants or prospective litigants therein.

It is held that to so hold would be in conflict with the most recent of our cases upon the subject—*Fawcett* v. *Railway Co.,* supra. This is an erroneous view. The case referred to was based upon the act of 1901, and arose before the passage of the act of 1903, although decided subsequent thereto. The latter act was not referred to in the opinion of the court in that case, because not applicable, for the reason just stated.

The first assignment of error is not well taken, and must be overruled.

The second assignment raises the point that the circuit judge erred in refusing to sustain the railway company's motion in arrest of judgment.

The ground of the motion in arrest was that the declaration failed to allege that there was any widow next of kin, or beneficiaries to take the recovery.

A declaration in an action to recover damages for wrongful death, defective in the matter referred to states no cause of action. *Railroad* v. *Pitt, Adm'r,* 91 Tenn., 86, 18 S. W., 118; *Love* v. *Southern Railway,* 108 Tenn., 104, 65 S. W., 475, 55 L. R. A., 471.

The appellee insists that the defect was cured by the verdict.

The rule on this subject is thus laid down in Chitty on Pleadings, volume 1, page 673: "The doctrine upon this subject is founded on the common law, and is independent of any statutory enactments. The general

principle upon which it depends appears to be that where there is any defect, imperfection, or omission in any pleading, whether in substance or in form, which would have been a fatal objection upon demurrer, yet if the issue be such as necessarily required, in the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection, or omission is cured by the verdict."

The author continues: "On the other hand, the particular thing which is presumed to have been proven must always be such as can be implied from allegations in the record by fair and reasonable intendment." He adds, on page 681: "The main rule on the subject of intendment is that a verdict will aid a defective statement of title, but will never assist a statement of a defective title or cause of action. . . . We may here add some causes in explanation of the rule that, if the plaintiff totally omit to state his title or cause of action, it need not be proved at the trial, and therefore there is no room for presumption to maintain the verdict. If, therefore, in an action upon a bill of exchange, the plaintiff omit to aver presentment to and refusal by the drawee, or that the defendant had notice of nonpayment, when such averments are necessary, the declaration will be bad even after verdict."

So, in *Knott* v. *Hicks,* 2 Humph., 162, where an action was brought against the indorsers of a promissory note,

Railroad v. Maxwell.

and there was no averment of notice of dishonor having been given to the indorsers, and no legal excuse assigned for not having done so, it was held that the omission was fatal, and would not be cured by verdict. The reason, of course, was that the declaration showed no cause of action against the indorsers. To same effect is *Baxter* v. *Erwin,* 1 Tenn. Cas., 113, 115. In *Sheppard* v. *Kindle,* 3 Humph., 80, the declaration upon a promissory note showed on its face that the note had been executed by a married woman, who was sued thereon. The court held that, inasmuch as the execution of a promissory note by a married woman created no legal obligation against her, the declaration showed no cause of action, and that the error was not cured by verdict. In *Greer* v. *Bumpass,* Mart. & Y., 94, it appeared that a *qui tam* action was brought to recover the penalty imposed by statute against "merchants, peddlers, and hawkers, for retailing merchandise without license." The declaration failed to aver that the defendant was a merchant, peddler, or hawker. This court held that it therefore did not state a cause of action, that the omission was not cured by verdict, and that the judgment should be arrested. The same ruling was made in *State* v. *Aikin,* 7 Yerg., 268. In *Shelton* v. *Bruce,* 9 Yerg., 24, it appeared that the suit was based on a certain paper writing, which was of such a nature that it did not import a consideration, but required one, of course, to make it obligatory. The declaration failed to aver a consideration. The court held that this was a fatal

defect, which could be taken advantage of by either de-
murrer, motion in arrest of judgment, or writ of error,
and, of course, could not be cured by verdict.

When the rule is thus stated—that is, that a verdict
cannot cure a declaration which states no cause of ac-
tion—it is seen to be reasonable, and commends itself
at once to the judgment of all.

There are numerous cases in this State which hold
that a declaration which states a good cause of action,
although defectively, will be aided by verdict. Where
the omissions are not so serious or vital as to leave
the declaration emasculated of the power to convey a
cause of action, the court will presume, after verdict,
that the missing matter was supplied by the evidence.
*Anderson* v. *Read,* 2 Overt., 205-208, 5 Am. Dec., 661;
*Rogers* v. *Love,* 2 Humph., 417-420; *Woodson* v. *Moody,*
4 Humph., 303-307; *Brown* v. *Parks,* 8 Humph., 294-297;
*Shelby* v. *Hearne,* 6 Yerg., 512-514; *Stanley* v. *Brit,*
Mart. & Y., 222; *Goodloe* v. *Potts,* Cooke, 399; *Anderson*
v. *Donelson's Ex'rs,* 1 Yerg., 197-199; *Cannon* v. *Phil-
lips,* 2 Sneed, 191; *Memphis Gayoso Gas Co.* v. *William-
son,* 9 Heisk., 314; *Morriss* v. *Bowers,* 58 S. W., 328.

In some of these cases the rule is stated to be that "if
a pleading contain a defect, either in substance or form,
which would have been fatal on demurrer, yet if, on
trial, the issue require proof of the fact so defectively
stated or omitted, the defect is cured by the verdict."
This statement is an approved one in our authorities,
and is perfectly sound, and also is perfectly intelligible,

Railroad v. Maxwell.

when applied, as our cases apply it, to the defective statement of a good cause of action, such as the cases which have just been cited exhibited; but, if applied to every form of statement which a declaration may assume, regardless of whether such statement contain the substance of a good cause of action merely set forth defectively, or to statements which set forth no cause of action at all—that is, if it be applied to the latter at all—it becomes both unsound and unintelligible, inasmuch as the more empty and valueless and void the frame of a declaration may be, in respect of the absence of a cause of action from its ineffectual contents, the more certainly fatal would be a well-drawn demurrer, and the more surely would it need to have its omissions supplied by the evidence, so that, on this course of decision, it would soon fall out that declarations would be dispensed with altogether, and the court and jury would have to depend upon sifting the complaint out of the oral evidence adduced at the trial. To such absurdity would the rule be reduced if applied to declarations which state no cause of action at all.

But in respect of declarations showing a good cause of action defectively stated, our cases go even further than the rule above quoted, and hold that even if the omitted averments or facts are found in the pleas of the defendant, or are necessarily inferable from the pleadings taken in their entirety, they will be supplied to the declaration, and the judgment will not be arrested after verdict. But, as already stated, if the omissions in the

declaration cannot be so supplied, and that pleading stands baldly apart from the case, expressing no cause of action, it cannot be aided by a verdict. Indeed, it cannot support a verdict, since there can be no lawful issue upon such a pleading, and without a lawful issue there can be no valid verdict. *Mayfield* v. *Beech*, 2 Sneed, 443; *Mosley* v. *Matthews*, Meigs, 578; *Trabue* v. *Higden*, 4 Cold., 620; *Cherry* v. *Smith*, 10 Heisk., 389-392.

Nor is it a condition precedent to making the motion in arrest that the defendant should first demur, since, if there be no cause of action averred in the declaration, that pleading cannot be made better or worse by a demurrer; nor can the plaintiff be prejudiced, in a legal sense, by the defendant's nonaction. And it has been held that a motion in arrest for a fatal defective complaint may properly be sustained, even though a demurrer to such complaint had been previously overruled, and, further, that grounds may be properly assigned in arrest which were not assigned in the demurrer, if one was filed. *Turnpike Co.* v. *Yates*, 108 Tenn., 428-430, 67 S. W., 89.

Of course, as to what special reasons may be assigned in arrest, no rules can be laid down, further than the simple one that they must all spring from the common ground that the declaration states no cause of action; but the special forms which these assignments may take must be as various as causes of action themselves, and must depend largely upon the complexity which

Railroad v. Maxwell.

this or that cause of action may exhibit, and the number of vital constituents which a careful analysis may discover it to contain. Upon such analysis a skillful counsel may be able to put his finger upon an essential element omitted, the absence of which leaves the declaration wholly ineffective, as was done in the present case.

Thus far, under the assignment of error which we now have under examination—the second—we have considered only the effect of omitting all averments concerning beneficiaries, and whether this omission was such as could be cured by verdict. There is, however, another statute referred to in the briefs of counsel (chapter 213, p. 457, Acts 1899).

That act reads as follows:

"An act to amend section 4025, of Shannon's Compilation of the statutes of Tennessee, being section 3130 of Milliken and Vertrees' Compilation.

"Be it enacted by the general assembly of the State of Tennessee.

"Section 1.    That section 4025 of Shannon's Compilation of the statutes of Tennessee, being section 3130 of Milliken & Vertrees' Compilation, be, and is hereby, amended by adding thereto the words: 'and if there be no widow or next of kin, then such right of action shall survive to his personal representative, for the benefit of his estate, to pay his debts, burial expenses, and the expenses of administration.'

"Sec. 2.    That this act take effect from and after its passage, the public welfare requiring it.

"Passed April 12, 1899."

This act is unconstitutional, because in violation of article 2, section 17, of the constitution of this State, in that it does not recite the caption or substance of the act to be amended. The reference to certain sections of the work popularly called "Shannon's Code" and to Milliken & Vertrees' Compilation is ineffectual. The precise question was decided in *Memphis St. Ry.* v. *State,* 110 Tenn., 598, 618, 75 S. W., 730. On page 618, 110 Tenn., page 734, 75 S. W., in passing on the validity of chapter 43, page 75, Acts 1903, which purported to annul sections 3074, 3075, and 3076 of Shannon's Code, the court held that the reference to these sections was ineffectual for the purpose of amendment. In disposing of the question, Wilkes, J., speaking for the court, said: "Shannon's Compilation or Code, though exceedingly valuable, and in constant use by the courts and people, is not a code enacted into a law, as is the Code or General Statutes of 1858; and, while a reference to it is sufficiently definite to indicate the volume meant, still it is not enacted into a code or law, and has no general title recognized by law, and it falls within the reasoning of the court in *Burnett* v. *Turner,* 87 Tenn., 129, 10 S. W., 194; and its several provisions, while remarkably accurate, have not the verity of enacted law or acts, within the meaning of the constitutional provisions." These observations are also true of Milliken & Vertrees' Compilation.

The act of 1899, therefore, has no bearing upon the present controversy. It results from what we have al-

ready said that the second assignment of error must be sustained.

The motion in arrest of judgment must therefore be sustained, and the action of the defendants in error dismissed, with costs. *McMinnville* v. *Stroud,* 109 Tenn., 569, 571, 72 S. W., 949.