HESSIG-ELLIS DRUG Co. *v.* STONE *et al.*

(*Jackson.* April Term, 1914.)

**MASTER AND SERVANT.** Wages. Liens and preferences. Enforcement.

A petition for the establishment of the preferred lien for employees' wages given by Acts 1897, ch. 78, as amended by Acts 1905, ch. 414, was properly denied where it merely described the property, which was in the hands of a receiver appointed by the court, as the drug business at the corner of C. and M. avenues in M., particularly as there were prior liens on part of the property, as it should have described the property specifically, with a statement of the nature of the lien, or an attachment should have been issued and levied. (*Post, pp.* 609-613.)

Acts cited and construed: Acts 1897, ch. 78.

Constitution cited and construed: Art. 2, sec. 17.

Cases cited and approved: Luttrell v. Railroad, 119 Tenn., 507; Bryan v. Zarecor, 112 Tenn., 511; Memphis Street Railway v. State, 110 Tenn., 608; Burnett v. Turner, 87 Tenn., 124.

---

FROM SHELBY.

---

Appeal from Chancery Court, Shelby County.— FRANCIS FENTRESS, Chancellor.

FITZHUGH & BIGGS, McKELLAR & KYSER, and ARTHUR C. FANT, for appellants Hessig-Ellis Drug Co.

L. T. M. CANADA, for appellee Stone.

Mr. Justice Lansden delivered the opinion of the Court.

The only question necessary to be determined in this case is whether the appellants Sager and Brookover have acquired a lien asserted in their petition. The chancellor held that they had not perfected the lien claimed because no attachment was issued and levied upon the stock of drugs, and because the act of 1905 creating the lien is unconstitutional and void.

The petitioners were employees of Mrs. Stone, one the prescription clerk and the other a porter in her drug store. She is indebted to them for wages in the sum stated in the petition.

The original bill is a general creditor's bill against Mrs. Stone and was filed March 15, 1913. March 18th a receiver was appointed and given possession of the stock of drugs in controversy. The petitioners filed their petition April 16th after the appointment of the receiver, and before the sale of stock of drugs by the receiver. The property which came into the hands of the receiver consists of a stock of goods and certain fixtures in the drug store, including a soda fountain and "appurtenances," one roller-top desk, one iron safe, and one McCaskey cash register. There was also another cash register, a hot soda appurtenance, and perhaps some other articles. The title to the McCaskey cash register was claimed by J. B. Stone. The other cash register was not paid for in full, the title to

129 Tenn. 39

which had probably been retained by the seller. The hot soda "appurtenance" was also incumbered by a purchase money debt. The soda fountain was claimed by the complainant for an unpaid balance of purchase price.

The description of the property upon which the petitioners claim their lien as contained in their petition is "the drug business at the corner of College and McLemore avenues in Memphis, Tenn.," and the petitioners "claim a prior and superior lien and equity under the statutes of the State over the other creditors to the proceeds derived from the sale when made of the fixtures and stock of drugs and other assets of said business which was conducted by the defendants at the corner of McLemore and College avenues."

The petitioners deny that the complainants have any title retained to the soda fountain described in their bill, "which soda fountain was used in said business at the corner of College and McLemore avenues."

The prayer of the petitioners, in part, is that petitioners have a decree for the amount of their claims and have been paid out of the assets or proceeds derived from the sale of the stock of drugs and fixtures and out of their assets of said business and that their lien "on all the assets of said business for what is found to be due them be declared, and that they have satisfaction in full for their indebtedness in preference to the general creditors of said estate."

Without deciding whether it is necessary, in a case like this, for attachment to actually issue and be levied

upon the property upon which the lien is claimed, it is clear that the petition does not contain a description of such definiteness as will take the place of the attachment. It would seem to be an idle ceremony to have attachment issue and be levied upon property in the hands of a receiver appointed in the case in which the attachment is sued out, but it is necessary that the petitioners identify the particular property upon which the lien is claimed by description in the petition or by description in the writ of attachment if it is issued and levied. The necessity of this is well illustrated by the adverse claims in this case to different articles of fixtures, the proceeds of the sale of which go to make up the fund out of which petitioners desire to have their claims paid. The conditional vendor of the soda fountain would, of course, have prior claims for his unpaid purchase money over that of the petitioners, and this would be true of the other fixtures upon which there was unpaid purchase money. But the petition does not identify any particular article upon which the lien is claimed, and confines the claim of the petitioners to the assets of the defendants generally. With admitted superior claims to particular articles, the court could not decree a prior lien upon the assets generally. It is necessary either for the petitioner to specifically describe the property upon which the lien is claimed, together with the statement of the nature of the lien, or it is necessary that a writ of attachment issue and be levied.

Upon the grounds stated, we affirm the decree of the chancellor denying the petitioners the lien sought. *Luttrell* v. *Railorad,* 119 Tenn., 507, 105 S. W., 565, 123 Am. St. Rep., 737; *Bryan* v. *Zarecor,* 112 Tenn., 511, 81 S. W., 1252, Ency. Pl. & Pr., vol. 22, p. 722.

While it is not necessary to decide the constitutionality of chapter 414 of the Acts of 1905, it is not improper to say that a very serious question is made upon the validity of this statute. The title of the act is "An act to amend chapter 78 of the Acts of 1897, so as to give employees and day laborers of individuals engaged in mercantile lines of business a first lien upon the merchandise for their services." The amendment proposed in the act is to insert after the word "firm" in line 5 of section 1 of chapter 78, Acts of 1897, the following, "or of any individual engaged in mercantile lines of business," and to insert after the words in chapter 78 sufficient general words to make the act read, when amended, so as to include individuals as well as corporations and firms.

The criticism of the act is that it violates section 17 of article 2 of our constitution, which requires all acts which repeal, revise, or amend former laws to recite in their caption or otherwise the title or substance of the law repealed, revised, or amended. It was held in *Memphis Street Railway* v. *State,* 110 Tenn., 608, 75 S. W., 730, and *Burnett* v. *Turner,* 87 Tenn., 124, 10 S. W., 194, that the reference to the chapter number of the act to be amended is not a sufficient compliance with the provision of the constitution just referred to. It

is further said in criticism of the act that its body does not recite either the caption or the substance of the act proposed to be amended, but only recites the proposed amendments.    As stated,   we do not determine the soundness of these criticisms, but we have set them out in this memorandum so that the attention of the next legislature may be directed to the questions made; and, if in its wisdom it is deemed proper, the whole subject of employers' liens may be re-enacted or the supposed infirmities of this act may be cured.   Chapter 78 of the acts of 1897 is also criticised as being class legislation because the lien  therein  conferred upon the employees is limited to employees of corporations and partnership.   If the act of 1905 is valid, the criticism made upon the act of 1897 would be removed because the latter act as amended would include individuals, firms, and corporations.

The decree of the chancellor is affirmed at the cost of the appellants.