GEORGE COLE MOTOR CO. *et al. v.* McCANLESS, COMMISSION-
ER OF FINANCE AND TAXATION, *et al.*

(*Nashville*, December Term, 1938.)

Opinion filed July 1, 1939.

626

Trabue, Hume & Armistead and Norvell & Minick, all of Nashville, for complainants.

Roy H. Beeler, Attorney-General, W. F. Barry, Jr., and Dudley Porter, Jr., Assistant Attorneys-General, and Horace Osment, of Nashville, for defendants.

Mr. Chief Justice Green delivered the opinion of the Court.

The bill in this case was brought by certain automobile dealers, a finance company, and a citizen, making the Commissioner of Finance and Taxation, the Clerk of the County Court of Davidson County and the Attorney-General of the State defendants. The bill sought a declaration as to the constitutionality of chapter 173 of the Public Acts of 1939, alleging many infirmities in the enactment. The defendants demurred and, upon the hearing, the chancellor was of opinion that the Act was invalid and so adjudged, overruling the demurrer and permitting an appeal.

The Act undertakes to inaugurate a system whereby all motor vehicles owned and operated in Tennessee must be represented by certificates of title issued in triplicate by the clerks of the county courts of the different counties, upon application therefor and upon prescribed proofs. One of these certificates is retained by the clerk, one filed with the Commissioner of Finance and Taxation, and the third one delivered to the owner of the motor vehicle, or, in case such motor vehicle has one or more liens thereon, the third certificate is delivered to the holder of the first lien. Transfer or encumbrance of a motor vehicle can only be accomplished by delivery of the certificate of title with proper notation thereon, record of which is to be made by the county court clerk. Dealers selling new cars must deliver importer's or manufacturer's certificate of title to the purchaser. Anyone owning, operating or transferring a motor vehicle without one of these documents of title is punishable by penalties provided. Under certain circumstances, the Commis-

sioner of Finance and Taxation is authorized to revoke and cancel certificates of title. Other provisions of the Act will be mentioned in the course of the opinion.

The Act is assailed as in violation of Article 2, section 17, and in several particulars as in violation of Article 1, section 8, and Article 11, section 8, of the Constitution of Tennessee, and of the Fourteenth Amendment to the Constitution of the United States.

Some of the objections under the law of the land, equal protection, and due process provisions of the State and Federal Constitutions might be overcome by a liberal construction of the enactment and interpolation of an implied requirement of notice as to certain investigations directed. A few of the objections might, with equal propriety, be made to the Statute of Frauds and registration laws. Other objections to the substance of the Act are no doubt well made, but we do not find it necessary to go into all these matters since we are of opinion that the Act is not framed so as to comply with Article 2, section 17.

The Act of 1939 embodies an express amendment or partial repeal of a former law with no reference to the title or substance of that law in caption or otherwise. Moreover, in our opinion, the Act contains several provisions that cannot be brought within the scope of its title by the most liberal construction.

The title to the Act is as follows:

"An Act to regulate the transfer of title to motor vehicles and to provide ways and means therefor and for the enforcement of this Act, and to provide penalties for violation of this Act, and to repeal all laws in conflict herewith."

We first refer to that section of the Act which ignores the mandate of Article 2, Section 17, of the Constitution

that "All acts which repeal, revive or amend former laws, shall recite in their caption or otherwise, the title or substance of the law repealed, revived or amended."

Section 10 of the Act before us runs as follows:

"Be it further enacted, That the provisions of Section 7192 of the Code or of any other section of the Code shall never be construed to apply to or to permit or require the deposit, filing or other record whatsoever of a chattel mortgage, conveyance intended to operate as a mortgage, trust receipt, or other similar instrument, or any copy of same, made hereafter and covering motor vehicles."

The section then goes on to provide that records of all such encumbrances shall be preserved by notation of same by the county court clerk on the certificates of title.

Section 7192 of the Code provides: "All mortgages and trusts of personalty shall be in writing, acknowledged and registered as hereinafter provided, to be valid against the creditors of the bargainor, or purchasers under him for value, and without notice."

The reference to section 7192 is sufficient, but there is no such reference to "any other section of the Code." Section 7621 of the Code provides: "The following writings may be registered: . . . (8) All mortgages and deeds of trust of either real or personal property." And section 7664 et seq. of the Code declare the effect of registration of such instruments.

██ This section 10 of the Act of 1939 is an express amendment or partial repeal of the provisions of section 7621 and section 7664 et seq. of the Code by enacting that they shall not be construed to apply to mortgages, trust deeds, etc., covering motor vehicles—that personalty shall not include motor vehicles. The difficulty here cannot be obviated upon the theory that this is a repeal

by implication. An implication is an inference. A thought or idea not represented by the words used but to be deduced therefrom. The very words used in section 10 undertake to amend or partially repeal "any other section of the Code" by excepting motor vehicles from its scope.

There áre several provisions of the Act before us which contravene the other mandate of Article 2, Section 17, of the Constitution: "No bill shall become a law, which embraces more than one subject; that subject to be expressed in the title."

As heretofore stated, under the Act of 1939, a motor vehicle can only be transferred or encumbered by delivery of a certificate of title or importer's or manufacturer's certificate and proper notation on the certificate of title by the county court clerk. Among other things, section 5 of the Act provides:

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

There is nothing in the caption of this Act to suggest legislation affecting a lien on vehicles for repairs and improvements (Code, section 7960); the garage keeper's lien on vehicles (Code, section 7979); or any common law lien for repairs or storage, and yet, as seen above, section 5 forbids the recognition of the right, claim or interest of any person in a motor vehicle unless evidenced by certificate of title.

Nobody would have supposed that an Act merely pur-

porting to regulate the transfer of title to motor vehicles would have contained provisions effective to impair all these liens. Under another provision of the Act, heretofore mentioned, the holder of the first lien on any motor vehicle has possession of the certificate of title. By the statute under consideration the mechanic or the garage man doing work on or storing a car brought to him—on an encumbered car, which most of them are—would miss his lien upon which he customarily relies. This would be true, unless he hunted up the holder of the certificate of title, had him go to the county court clerk, and proper entry made on that document. We are satisfied no such extraordinary result was contemplated by members of the General Assembly voting for this bill, nor was any such result fairly indicated by the title of the Act.

Section 13 of the Act of 1939 provides when a motor vehicle "is dismantled, destroyed, or changed in such manner that it loses its character as a motor vehicle," the owner shall surrender his certificate of title to the county court clerk, etc., etc., and section 19 of the Act provides that a failure to surrender such certificate of title "in case of the destruction or dismantling or change of a motor vehicle," etc., shall subject the owner to a fine not exceeding $200, or imprisonment of not more than ninety days, or both.

We cannot regard a caption indicating an Act regulating the transfer of title to motor vehicles as covering a provision making it a criminal offense to fail to surrender a document of title to an automobile that has been destroyed—become worthless and no longer is subject to trade or barter.

Section 19 of the Act of 1939 makes it unlawful for any dealer to "hold or display for sale a new motor ve-

hicle without having obtained a manufacturer's or importer's certificate or a certificate of title therefor" subject to fine not exceeding $200, or imprisonment for not more than ninety days, or both. The manufacturer's or importer's certificate, the Act (section 14) provides, "shall be in the following form." Without setting it all out, the certificate provides that the manufacturer or importer "does hereby grant, bargain, sell and transfer unto" the dealer.

Such being the new enactment, there could be no lawful "display for sale" of a new motor vehicle held by a dealer on consignment. Many of the smaller dealers handle cars in this way. Naturally the manufacturer nor the importer would be willing to entrust the consignee with certificate showing full transfer of title as provided by the Act. Without such certificate the dealer could not handle or display a car for sale.

As before noticed, the holder of the first lien under this enactment is entitled to possession of the certificate of title. Indeed, he must have that document to secure his lien. It follows that no matter how trivial the encumbrance, how valuable the owner's equity, it is impossible for the owner to sell his equity in a motor vehicle and make good title thereto, unless the lien holder, in possession of the certificate of title, assents and agrees to proper entries on that paper. It occurs to us that this result could not reasonably have been anticipated as flowing from an Act purporting to be one regulating the transfer of title to motor vehicles. We are not unmindful of *Palmer* v. *Southern Express Co.*, 129 Tenn., 116, 165 S. W., 236, holding that regulation fairly indicates partial prohibition. That is, under an Act entitled as one to regulate a particular thing, the doing of that thing

may be prohibited except in a prescribed manner. This Act, however, does not afford the owner of an automobile any method by which he may dispose of his equity in an automobile, unless the first lien holder agrees. There is a prohibition against the exercise of a property right. Such a prohibition is not germane to the transfer of title to motor vehicles and brings the Act in conflict with Article 2, Section 17, and such a prohibition, it may be added, seems clearly in conflict with Section 8 of Article 1 of the Constitution of Tennessee and of the Fourteenth Amendment to the Constitution of the United States.

There are other matters contained in the Act of 1939 which are perhaps extraneous to its title but we think we have pursued the subject to a sufficient length.

We are referred to *State ex rel. City Loan and Savings Co. v. Taggert*, 134 Ohio St., 374, 17 N. E. (2d), 758, in which an Act was sustained which is said to be the prototype of the Act before us. The title of the Ohio statute was not in controversy at all and was not considered by the Supreme Court of that State. Probably no objections could have been made to the title of that statute since it was largely amendatory and made specific reference to sections of the General Code of that State. The same is true of an amendatory Act considered in the *Taggert Case*. Laws of Ohio, 117, 1937-1938, pp. 373, 726.

For the reasons stated, the decree of the chancellor is affirmed.