CHEATHAM COUNTY *et al. v.* MURFF *et al.*

*(Nashville,* December Term, 1939.)

Opinion filed April 6, 1940.

L. J. PARDUE, and P. O. PITT, both of Ashland City, and JOE BROWN CUMMINGS and ALBERT WILLIAMS, both of Nashville, for complainants.

CORNELIUS, MCKINNEY & GILBERT, of Nashville, and P. H. DUKE, of Ashland City, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The bill filed in this cause challenged the constitutionality of chapter 442 of the Private Acts of 1939. The chancellor held the Act to be valid and the complainants have appealed.

The most serious charge made against the Act is that it violates that portion of Section 17 of Article 2 of the Constitution providing that "All acts which repeal, revive or amend former laws, shall recite in their caption or otherwise, the title or substance of the law repealed, revived or amended."

The scope of the Act involved is fairly indicated by its caption. The Act is lengthy, containing twenty-five sections, and sets up a detailed scheme for the maintenance, operation and control of the roads, bridges and levees in counties designated. Actually it applies to Cheatham County alone.

The caption of the Act is as follows:

"An Act applying to each county in the State having a population of not less than Nine Thousand and Twenty (9,020) nor more than Nine Thousand and Thirty (9,030), according to the Federal Census of 1930, or any subsequent Federal Census; creating a County Highway Commission of six (6) members, with authority to employ a County Road Supervisor; regulating the working, laying out, construction, repair and maintenance of public roads, bridges and levees in any such county; providing for the election, qualification and organization of said County Highway Commission; fixing and defining the duties, powers, compensation and terms of office of said Commission and the members thereof and the County Road Supervisors; providing for the opening, closing

or changing of roads by securing rights-of-way for some and for the raising of revenue for roads, bridges and levee purposes and for labor and, material to be used thereon; directing, authorizing and empowering the Quarterly County Court to levy taxes for roads, bridges and levees and providing for the collection of the same; and providing for the taking over by the Highway Commission and the Supervisor hereby created of all the machinery, tools and equipment now owned in any county to which this Act applies for the purpose of building roads in any such county; and laying off each county to which this Act applies into road districts, and to repeal Chapter 775 of the Private Acts of 1927, and all Acts amendatory thereof, and all other laws in conflict with the provisions of this Act.''

The contention is that this Act of 1939 proposes both in its caption and body to repeal a former law and that the reference to that law merely as ''Chapter 775 of the Private Acts of 1927'' is not a recital of its title or substance and is inadequate under the constitutional provision above quoted.

Chapter 775 of the Private Acts of 1927 was likewise an Act setting up a scheme for the maintenance, operation and control of the roads, highways and bridges in Cheatham County and the chancellor was of the opinion that, the Act of 1939 covering the same ground as that covered by the Act of 1927, the later Act worked a repeal by implication of the former Act. Accordingly he treated the words ''to repeal Chapter 775 of the Private Acts of 1927,'' etc., contained in the title and section 23 of the Act of 1939 as surplusage, ineffective to characterize the Act of 1939 as a distinctive and expressed attempt to repeal a former law.

██ It is of course conceded by counsel that repeals by implication are not governed by the rule applicable to express repeals and, as we understand the argument, it is not denied that this Act of 1939, if otherwise valid, would have accomplished an implied repeal of the Act of 1927 had all reference to the former Act been omitted from the later Act.

The narrow question thus presented is whether a law complete in itself, dependent on no former law, and suitably entitled, must be destroyed because it contains an abortive reference to a former law repealed by the necessary implications of the later law. This court has not as yet affirmed such proposition but on the contrary previous decisions support a negative conclusion.

In many decisions the court has said that a general recital in the caption or body of a particular Act of the Legislature to the effect that all previous laws in conflict were repealed was without force. That "its presence in the bill did not make the act a repealing law or a non-repealing law; and it will not be regarded for the purpose of vitiating the law, nor will it be permitted to have that effect." *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481, 34 L. R. A., 656; *Memphis* v. *American Express Co.,* 102 Tenn., 336, 52 S. W., 172; *Turner* v. *State,* 111 Tenn., 593, 69 S. W., 774; *Van Dyke* v. *Thompson,* 136 Tenn., 136, 189 S. W., 62; *Hibbett* v. *Pruitt,* 162 Tenn., 285, 36 S. W. (2d), 897.

In *McCamey* v. *Cummings,* 130 Tenn., 494, 172 S. W., 311, 312, the caption of the Act under consideration, after attempting to indicate its subject, proceeded "and to amend section 2423 of T. & S. Code." The court treated the words quoted as mere surplusage. In this particular the case has not been criticized, although so much of the decision as applied the doctrine of elision to save an Act

dealing with a matter beyond the scope of its title has often been under fire.

In *Stinnett* v. *State,* 142 Tenn., 94, 217 S. W., 343, the Act challenged was entitled "An act to amend the criminal laws of the State of Tennessee, and to make the breaking and entering into the business house, outhouse, or any other house of another, other than a mansion house, with intent to commit a felony, a felony." Acts 1871, c. 39. The Act went on to describe the offense, as indicated in the caption, and provided punishment for its commission. The court disregarded the reference in the caption to "the criminal laws of the State of Tennessee" and said that the statute was in fact not amendatory in its nature but really created a new offense. The indefinite reference to former laws was held harmless.

We are not able, in this connection, to distinguish between the effect of a clause generally repealing all former laws in conflict and a clause repealing former laws by reference to chapter numbers of the published Acts of the Legislature for particular years. In the same plight are clauses repealing numbered sections of unofficial compilations of our statutes. In none of these cases is "the title or substance of the laws repealed" recited. In no one of these instances, more than in another should such a clause be looked to for the purpose of vitiating the law in which it is contained or be permitted to have that effect.

This court has not stricken down any autonomous statute because of its failure to recite the title or substance of previous legislation touched by it. Most of the Acts of the Legislature held invalid for this constitutional defect were dependent for their force, indeed for their sense, on previous laws, not adequately recited.

Perhaps our leading case dealing with this particular constitutional provision is *Memphis Street Ry. Co.* v. *State,* 110 Tenn., 598, 75 S. W., 730. Chapter 43 of the Acts of 1903 was there under consideration. It undertook to amend "Chapter 52 of the Acts of 1891, being Sections 3074, 3075 and 3076, Shannon's Code of Tennessee," so as to include all street railroads in designated counties. This was all. The Act was altogether dependent on a previous law for its meaning and the quoted reference to such law was no recital of its title or substance and the Act was accordingly held bad.

The opinion in *Memphis Street Ry. Co.* v. *State, supra,* collates all previous decisions of this court in point. We have re-examined all of them. All of these decisions holding Acts of the Legislature unconstitutional for inadequate reference to previous laws dealt with Acts which were likewise entirely dependent on previous laws for their sense as well as for their effect. None of the Acts stricken down was inherently effective. We except from this observation cases decided prior to *Home Insurance Co.* v. *Taxing District,* 72 Tenn. (4 Lea), 644, in which it was held for the first time that repeals by implication were not controlled by the constitutional provision under discussion.

As explained in *Turner* v. *State,* 111 Tenn., 593, 69 S. W., 774, the case of *Shelton* v. *State,* 96 Tenn., 521, 32 S. W., 967, dealt with an Act amendatory in nature, the provisions of which were operative in that sense only— dependently operative—and such Act was bad because of insufficient reference to former laws amended.

Following *Memphis Street Ry. Co.* v. *State, supra,* are *Railroad Co.* v. *Maxwell,* 113 Tenn., 464, 82 S. W., 1137; *State* v. *Smith,* 119 Tenn., 521, 105 S. W., 68; *Hessig-Ellis Drug Co.* v. *Stone,* 129 Tenn., 608, 167 S. W., 864;

*Willis* v. *Mann Construction Co.,* 145 Tenn., 318, 236 S. W., 282; and *Mattei* v. *Clark Hardware Co.,* 155 Tenn., 184, 290 S. W., 977. All these cases dealt with Acts of the Legislature inoperative in themselves, not autonomous, dependent on former laws, and all such Acts were invalid because of insufficient reference to such former laws.

Complainants call our attention to *Cole Motor Co.* v. *McCanless,* 174 Tenn., 625, 130 S. W. (2d), 93, 95, where the Act held bad was not wholly dependent upon previous laws for its sense and force, but where vital provisions of such Act were ineffective unless former laws were repealed. In this case, chapter 173 of the Acts of 1939 was held unconstitutional, for one reason, because in equivalent terms it undertook to repeal certain former laws permitting or requiring the registration of mortgages of personality in so far as such conveyances covered automobiles. There was no reference to the former laws save as "any other section of the Code." The court did not think the Act was so framed as to repeal or amend these registration laws by implication and because of insufficient recital of those laws, which it undertook to repeal, and for various other reasons, chapter 173 of the Acts of 1939 were stricken down.

 The object of the constitutional provision under consideration was to prevent the pernicious practice of enacting statutes whose effect was unknown to the members of the Legislature and to the people. *Home Insurance Co.* v. *Taxing District,* 72 Tenn. (4 Lea), 644; *Knoxville* v. *Lewis,* 80 Tenn. (12 Lea), 180. To direct the attention of the Legislature to the existing law and the proposed change and thus prevent improvident legislation. *Memphis Street Ry. Co.* v. *Byrne,* 119 Tenn., 278, 104 S. W., 460, and *Mattei* v. *Clark Hardware Co., supra.*

When, under an appropriate caption, an Act of the Legislature on its face plainly discloses its whole effect and where it is independently operative, neither legislators nor the people would be further enlightened as to its scope by a recital of the title as to its scope by a recital of the title or substance of former laws. If there is irreconcilable conflict, the former laws are repealed by implication. If there is no such conflict and the earlier and later laws involve the same subject-matter, they will be construed *in pari materia*.

Counsel for the complainants have set forth in their brief some excerpts from previous opinions of this court and rely upon these expressions as supporting conclusions contrary to those we have indicated. All these expressions must be considered with reference to the particular circumstances of the cases in which they were used. The decisions of this court, its particular rulings, have been as above outlined. For the reasons stated by us, we think that chapter 442 of the Private Acts of 1939 is not unconstitutional because of any failure to recite the title or substance of a former law.

The second assignment of error challenges the Act of 1939 upon the idea that it contains matter beyond the scope of its caption in violation of another clause of Section 17 of Article 2 of the Constitution.

It is said that the caption of the Act indicates a purpose to create a County Highway Commission of six members but that the Act in reality creates a County Highway Commission of seven members and that the body of the Act is thus broader than its title. The caption, among other things, describes the Act as one "creating a County Highway Commission of six (6) members, with authority to employ a County Road Supervisor; . . . providing for the election, qualification and

organization of said County Highway Commission,'' etc. Section 1 of the Act proceeds to create a County Highway Commission composed of six members and then provides that ''the County Judge or Chairman of the County Court shall be ex-officio and additional member of said Commission and shall serve as Chairman thereof.''

We think the criticism here made is not well founded. The only thing created is a Commission of six. Six new officers were created. The office of county judge or chairman was not created by the Act. Under the further statement of the caption that the Act was one to provide for the *organization* of the Highway Commission, it was proper to enact that the County Judge or Chairman should be an *ex-officio* and additional member of the Commission. The purpose of the Act, as indicated in the caption, was to provide both for the creation and for the organization of the Highway Commission.

The third assignment of error points out that by sections 21 and 22 of the Act the County Judge or Chairman, if he should ''be of the opinion that the County should have a bridge and levee Supervisor'' might proceed to appoint or employ such a functionary at a salary in not excess of $125 a month. It is said that the caption of the Act indicated that its purpose was to entrust the Highway Commission with supervision and control of bridges and levees and that nothing in the caption indicated any purpose to confer upon the County Judge or Chairman, through his appointee, such supervision and control. That for this reason the body of the Act is broader than its title.

It appears from the face of the bill herein that the county judge has not appointed nor employed a bridge and levee supervisor. The county judge or chair-

man may never reach the conclusion that the appointment or employment of a supervisor is necessary or desirable. No one has the right to attack a particular provision in a statute as unconstitutional unless it affects him adversely. This court has said, when an Act is void under the one-subject clause of the Constitution, "anyone against whom such act is sought to be enforced may attack it on that ground, and if successful he will be relieved of whatever burden the statute in any of its parts seems to impose on him." *State* v. *Cumberland Club,* 136 Tenn., 84, 101, 188 S. W., 583, 587.

In cases relied on by complainants in this connection, *Mengel Box Co.* v. *Fowlkes,* 135 Tenn., 202, 186 S. W., 91; *Harrison* v. *State,* 136 Tenn., 229, 188 S. W., 941; and *Mayor & Aldermen of Town of Gallatin* v. *Sumner County,* 152 Tenn., 518, 279 S. W., 387, the Acts of the Legislature challenged were being enforced. In the case before us the provisions of sections 21 and 22 of the Act of 1939 are not being enforced nor does it appear that such an attempt ever will be made.

 The fourth assignment of error complains because the Act of 1939 confers upon the County Judge or Chairman a second office of trust or profit. A similar contention with respect to the County Judge of Rutherford County was made and overruled in *Powers* v. *Wiseman,* 167 Tenn., 140, 67 S. W. (2d), 142. The question is further considered in *Hancock* v. *Davidson County,* 171 Tenn., 420, 104 S. W. (2d), 824.

 .The fifth assignment of error is directed to a provision of the Act which the chancellor held bad and elided. There was no appeal from the action of the chancellor and we think that he was obviously correct. The particular provision was easily severable. By this provision an individual named was designated to hold the

office of road supervisor from the passage of the Act until September 1, 1940. We think the County Highway Commission, by section 1 of the Act, is fully empowered to employ a supervisor of its own selection.

 The sixth assignment of error, in our opinion, proceeds on a misinterpretation of the statute. If it be conceded that no part of any bridge and levee fund can be devoted to roads, still it does not follow that no part of the road fund can be used for bridges and levees. The two sections of the Act dealing with the two funds are differently worded. We think the use of the road fund is not restricted so as to bring about a discriminatory application of the gas tax fund received from the State.

The decree of the chancellor is affirmed.