CHICAGO & SOUTHERN AIR LINES, INC. *v.* EVANS.

(*Nashville,* December Term, 1950.)

Opinion filed May 7, 1951.

CHARLES L. CORNELIUS and W. OVID COLLINS, JR., both of Nashville, R. S. MAURER and L. E. BLACK, JR., both of Memphis, for appellants.

ALLISON B. HUMPHREYS, JR., Assistant Attorney General, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant filed its original bill in the chancery court against the State Commissioner of Finance and Taxation to recover $8,077.65, which represented the total amount of taxes assessed against it under the State Retailers' Sales Tax Statute, the said amount having been paid under protest. Contention is made in the bill that it is exempt from all privilege taxes pursuant to the provisions of Chapter 34, Public Acts of 1949.

The Commissioner of Finance answered the bill and insisted that Chapter 34, Public Acts of 1949, was adopted solely to exempt aviation gasoline from the seven cents (7c) privilege taxes then levied upon the storage, use, sale and distribution of gasoline by Sections 1126, 1127 and 1128 of the Code of Tennessee; that Chapter 245 of the Public Acts of 1949 was enacted for the purpose of amending the Retailer's Sales Tax Statute so as to apply the Sales Tax to aviation gasoline.

The two Acts which control the present controversy are Chapters 34 and 245 of the Acts of 1949. The caption of Chapter 34 is, as follows:

"AN ACT to be entitled 'An ACT to exempt from the imposition of taxes upon the storage, use, sale and distribution of gasoline, such gasoline as is designed for use in airplane and aircraft motors and which is actually used in engines of airplanes or aircraft for the purpose of propelling the same.'

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That it is hereby declared the policy of the State of Tennessee to except from the operation of the statutes levying a tax upon the storage, use, sale and distribution of gasoline, the storage, use, sale and distribution of gasoline designed for and actually used in the operation of airplane and aircraft motors.

"Sec. 2. Be it further enacted, That pursuant to the policy declared in Section 1 of this Act no tax upon gasoline designed for and actually used in aircraft and airplane motors shall be levied and collected by the State, provided, however, that persons claiming such exemption shall be entitled to the same only when they shall file with the Commissioner of Finance and Taxation, on such forms as said Commissioner shall require, and at such times as he may deem reasonable, a complete state-

ment of the amount of gasoline used, stored, sold or distributed upon which such exemption from tax is claimed, showing the date and quantity of each purchase of such gasoline, the vendor from whom such fuel was purchased, the number of gallons upon which exemption is claimed, and such other information as the Commissioner of Finance and Taxation shall deem pertinent."

Chapter 245 which amends Chapter 3, Public Acts of 1947, is as follows:

"Sec. 2. Be it further enacted, That Section 6 of Chapter 3 of the Public Acts of 1947 be amended by adding after the word 'Gasoline', which is the first word in the second paragraph of Section 6, the following words: 'as defined by statute in Tennessee, upon which a privilege tax of seven (7¢) cents per gallon is paid, and not refunded, or gasoline used for 'agricultural purposes' as this term is defined in Chapter 21 of the Public Acts of 1947."

The chancellor sustained the defense made in the answer that the foregoing amendment to the Sales Tax Statute was to make the sale of gasoline, not paying a seven (7c) cents per gallon privilege tax, liable for payment of the Sales Tax. His opinion is, in part, as follows:

"Upon consideration of the acts in question, the Court has reached the conclusion that it was the intention of the legislature in passing Chapter 34 of the Public Acts of 1949 simply to remove aviation gasoline from the then only existing privilege tax, which as heretofore has been stated was the 7c privilege tax imposed upon such commodity by Code Section 1126, et seq. It was not the legislature's intent to relieve said aviation gasoline from any future privilege tax.

"The same legislature which removed aviation gasoline from the 7c tax enacted the amendatory Chapter 245, which, as aforesaid, had the effect of subjecting gasoline on which the 7c was not paid to the Sales Tax Act. Had it been the intent of the legislature to exclude aviation gasoline from the sales tax, it could have expressly provided for it in said Chapter 245. Not having done so, and for the other reasons stated, this Court has reached the conclusion that pursuant to the enactment of said Chapter 245 of the Public Acts of 1949, the complainant became liable for sales tax on gasoline purchased by it, and is not therefore entitled to the relief sought, and a decree will be entered accordingly."

The only errors assigned which reach the heart of this case are the following:

"The Chancellor erred in finding and decreeing that Chapter 245 of the Public Acts of 1949, which is an Act expressly amendatory of Chapter 3 of the Public Acts of 1947, had the effect of subjecting the privilege of storing, using, selling and distributing aviation gasoline to the tax levied on such privilege by Chapter 3 of the Public Acts of 1947."

"The Chancellor erred in finding and decreeing that pursuant to the enactment of Chapter 245 of the Public Acts of 1949 the complainant became liable for sales tax on gasoline purchased by it, and, therefore, was not entitled to recover the taxes paid under protest."

The argument is made by the appellant Air Lines that Chapter 245 does not, and cannot, repeal by implication the provisions of Chapter 34; "that an amendment or repeal of Chapter 34 could not be accomplished by an Act expressly amendatory of some other Act, such as Chapter 245 of the Public Acts of 1949, which was an Act expressly amendatory of Chapter 3 of the Public

Acts of 1947." It is further insisted by the appellant that Chapter 34 provided an exemption from all present and *future privilege taxes,* and it was error to hold that Chapter 245 had any valid probative force whatever. The argument is advanced that the alleged amendatory Act is in violation of Article 2, Section 17, of the State Constitution; that "an expressly amendatory Act cannot recite in its caption, or otherwise, the title or substance of more than one Act and avoid violation of the single subject clause of this constitutional section", citing *Shelton* v. *State,* 96 Tenn. 521, 32 S. W. 967; *Turner* v. *State,* 111 Tenn. 593, 69 S. W. 774; *Cheatham County* v. *Murff,* 176 Tenn. 93, 138 S. W. (2d) 430; and *Brown* v. *Knox County,* 187 Tenn. 8, 212 S. W. (2d) 673, 5 A. L. R. (2d) 1264.

It is a settled rule of statutory construction that repeals of statutes by implication are not favored, and will not be presumed unless there is an irreconcilable conflict between the later and earlier laws. *Unicoi County* v. *Barnett,* 181 Tenn. 565, 182 S. W. (2d) 865; *County Board of Highway Com'rs* v. *Wilde,* 179 Tenn. 141, 163 S. W. (2d) 329.

In response to the appellant's further contention that Chapter 245 is in violation of the single subject clause of the State Constitution, it is sufficient to say that this Act does not purport to repeal any Act. It amends the Sales Tax Statute and it may have, and in fact does have, the effect of modifying a former statute without making any reference to it.

"Where, under an appropriate caption, a legislative act on its face plainly discloses its whole effect, and where it is independently operative, there is no application of the constitutional provision that all acts which repeal, revise, or amend former laws shall recite, in

their caption or otherwise, the title or substance of the law repealed, revised, or amended. Const., art. 2, Section 17." *Cheatham County* v. *Murff,* 176 Tenn. 93, 138 S. W. (2d) 430.

Our cases generally hold, as in *Bailey* v. *Drane,* 96 Tenn. 16, 33 S. W. 573; and *Brown* v. *Knox County,* supra, that acts which suspend the operation of prior repugnant acts by implication are not subject to the strictures of Article 2, Section 17 of the Constitution. In *Texas Co.* v. *McCanless,* 177 Tenn. 238, 148 S. W. (2d) 360, 363, it is said:

"It would be utterly impractical, if not impossible, to require of a legislative act that it contain apt reference to every law which the act might possibly touch. The Code of 1932 contains 12278 sections. Legislation would be greatly embarrassed by a rule that required a statute amending a particular section of the Code to refer to every other section of the Code which by implication the statute might reach."

While we have no case in this State dealing with the question whether an act which is expressly amendatory of an act can by implication suspend the operation of another prior act without reference to the act which is suspended or repealed, our attention is directed on the State's brief to *State Board of Charities and Corrections* v. *Combs,* 193 Ky. 548, 237 S. W. 32, 35, wherein the Court of Appeals of Kentucky holds:

"If an amendatory act contains legislation which is irreconcilably inconsistent with a provision of a previously existing statute, which is not mentioned in the title of the amendatory act, and the provision of the amendatory act is germane to its own title and not foreign to it, so that it is covered by the title of the act, no reason is perceptible why the provision of the amenda-

tory act would not work a repeal of the previously existing and outstanding inconsistent statute, by implication.''

■■ In construing the statutes invoked in the case at bar the question of the intention of the legislature is of paramount importance. Both of these Acts were passed by the legislature of 1949, the first on February 24, 1949, and the second (Chapter 245) on April 15, 1949. It cannot be doubted that the members had full knowledge of the general purpose of these Acts. The first, Chapter 34, clearly exempted aviation gasoline from the seven (7¢) cent tax then being collected. The second, Chapter 245, made it clear that aviation gasoline, exempt under the former Act, should be liable for the two per cent Sales Tax. We cannot find in these Acts a legislative intent to exempt aviation gasoline *from all future privilege taxes* including a tax that was collectible under Chapter 3, Public Acts of 1947, known as the Retailers' Sales Tax. On the contrary there is the intent that it should pay such a tax.

When these Acts are considered in *pari materia* we find that they disclose the following purposes, (1) it was the legislative intent to relieve the appellant, as well as other dealers in aviation gasoline, of the burden of paying a privilege tax of seven (7c) cents per gallon upon gasoline ''actually used in the operation of airplane and aircraft motors.'' Sec. 2, Chapter 34, and (2) having granted this substantial relief from its tax burden it was later deemed only equitable and right that such gasoline should be subject to the two per cent Sales Tax, hence Chapter 245, amending Chapter 3, Acts of 1947. The effect of this latter Act, called an amendatory act, was not so much a repealer of the former Act as a modification of it. The known reason for exempting ''aviation gasoline'' from

payment of the seven (7c) cents per gallon is pointed out on the State's brief, that this tax "was primarily for the maintenance of the State Highway System" and since "aviation gasoline" had no relation to State Highways the legislature wisely granted the exemption by Chapter 34. But there could be no good reason advanced for granting an exemption from liability under the State Sales Tax Act when most all other tangible personal property was subject to the tax.

The assignments of error are overruled and the Chancellor's decree is affirmed.

All concur.