The STATE of Tennessee, which sues by Ronald A. WEBSTER, District Attorney General on the relation of Park M. STRADER, Individually, and as Property Assessor for Knox County, Tennessee, et al., Appellants,

v.

L. D. WORD, County Judge for Knox County, Tennessee, et al., Appellees.

Supreme Court of Tennessee.

April 15, 1974.

———◆———

W. P. Boone Dougherty, Bernstein, Dougherty & Susano, Knoxville, for appellants.

Richard Stair, Sr., Knoxville, for L. D. Word, and others.

Everett H. Falk, Asst. Atty. Gen. of Tenn., for State of Tenn., David M. Pack, Attorney General, and others.

Foster D. Arnett and Arnett, Draper & Hagood, Knoxville, for Cole-Layer-Trumble.

## OPINION

FONES, Justice.

The Knox County Assessor and the Knox County Board of Commissioners (hereinafter appellants) filed a complaint in the Chancery Court of Knox County against the County Judge of said County, members of the Quarterly County Court of said County, in their official capacities, Cole-Layer-Trumble Company, the Knox County Board of Equalization, and the State level defendants named in the style hereof (hereinafter appellees).

Dual theories for relief are advanced, quo warranto and declaratory judgment. The suit is properly brought, as to form, for an action in quo warranto; that is, in the name of the State by the District Attorney General of Knox County on relation of plaintiffs. Combined therewith, plaintiffs named in the first paragraph hereof sue as individuals and in their official capacities as Assessor and Board of Commissioners, for declaratory relief.

This suit results from the reappraisal of property in Knox County as required by T.C.A. §§ 67–1718 to 67–1722, enacted in 1967, with amendments in 1972 and 1973.

The County Judge, having received authorization from the Quarterly County Court entered into a contract with Cole-Layer-Trumble Company, professional appraisers and mappers (hereinafter C–L–T), dated April 17, 1970, providing for reappraisal and ownership mapping of all real property in Knox County, in accord with Title 67, Tennessee Code Annotated. C–L–T appraised the property and announced the appraised values in November, 1972.

This suit was instituted on February 6, 1973. First appellants allege that a controversy exists between appellants and the Knox County appellees as to which governmental body in Knox County had authority to contract for the appraisal; second, appellants allege that, "Defendants have disputed the power, authority and duty of the Knox County Property Assessor to assess real property in Knox County, and additionally to make changes in the appraisals made by the defendant, Cole-Layer-Trumble Company"; third, it is asserted that T.C.A. §§ 67–605 and 67–1721 abrogate the power of the County Assessor to assess real property, vesting that authority in others; that said statutes are in conflict with the Assessor's statutory duties as provided by T.C.A. §§ 67–633 and 67–616, and that said conflict constitutes a cloud on the authority and duties of the Knox County Property Assessor; fourth, that the Assessor has been advised by large numbers of reputable landowners of Knox County that C–L–T has failed to follow and adhere to the appropriate statutes and to the rules and regulations adopted by the Division of Property Assessments, and ap-

proved by the State Board of Equalization; that, as a result of the alleged irregularities, inconsistencies and inequities in the appraisal made by C–L–T, the Assessor will be unable to properly carry out the duties of his office with respect to fixing the values of real property in the County, and that the court should make a full inquiry into the mode, manner and conduct of the appraisals performed by C–L–T; fifth, the Board of Commissioners assert that the contract entered into with C–L–T is void because the Quarterly Court assumed powers which it did not have, in violation of Chapter 183 of the Private Acts of 1937.

The foregoing constitutes the contentions of appellants in their cause of action sounding in quo warranto.

With respect to the relief sought in that portion of the bill designated as a declaratory judgment action, suffice it to say that appellants assert the unconstitutionality of T.C.A. § 67–1718. Its constitutional faults are said to be the delegation of legislative power to the State Board of Equalization, and inequality of application of the reappraisal requirements, to all counties in the State, relying upon Article 2, Sections 1 and 2, and Article 11, Section 8, Constitution of Tennessee; Fifth Amendment, United States Constitution.

Several individuals and corporations, owning real property in Knox County, sought to intervene. Their intervention was denied, but, by agreement, they were accorded the status of amicus curiae.

After numerous preliminary proceedings, appellees answered and moved for judgment on the pleadings.

The learned Special Chancellor designated by the Chief Justice of this Court to hear the case because of the resignation of the presiding Chancellor, filed a thorough and well-reasoned memorandum opinion, wherein he held that (1) a quo warranto proceeding cannot be maintained for the purposes set out in the complaint; (2) the Reappraisal Act of 1967, as amended, does not violate any provision of the Tennessee or the United States Constitution; (3) the Quarterly County Court was the proper unit of local government to implement the appraisal program in Knox County and its action, and the action of the County Judge pursuant thereto, was valid and binding on Knox County; (4) the Chancery Court of Knox County did not have jurisdiction to review the manner in which the County Board of Equalization and the State Board of Equalization carry out their official duties.

Appellants' four assignments of error are that the foregoing rulings of the Chancellor were erroneous, and we will discuss them in the order recited in the preceding paragraph.

The exclusive grounds for an action quo warranto are set out in T.C.A. § 23–2801. Said section provides as follows:

*"Grounds for action.—*An action lies in the name of the state against the person or corporation offending, in the following cases:

(1) Whenever any person unlawfully holds or exercises any public office or franchise within this state, or any office in any corporation created by the laws of this state.

(2) Whenever any public officer has done, or suffered to be done, any act which works a forfeiture of his office.

(3) When any persons act as a corporation within this state, without being authorized by law.

(4) Or if, being incorporated, they do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation.

(5) Or exercise powers not conferred by law.

(6) Or fail to exercise powers conferred by law and essential to the corporate existence."

The principal contention of the appellants on this appeal is that the Chancellor overlooked subsection (5) of T.C.A. § 23–2801. There are no allegations in the complaint that any public official is usurping an office, nor has committed any act that would work a forfeiture of an office, so as to come within the scope of subsections (1) and (2) of the statutes. In his memorandum opinion the Chancellor correctly observed that subsections (1) and (2) provide the only grounds for the maintenance of a quo warranto action against persons holding public office. Subsections (3), (4), (5) and (6) of the above-quoted statute apply to corporation officers, corporations, trustees, etc., but do not apply to public officials. See Caruthers' History of a Lawsuit, 8th Ed., § 604.

All appellees are public officers sued in their official capacity, and not as individuals. A quo warranto action against a public official has been held to be a suit against such person in his individual capacity, and not his official capacity. State v. Stine, 200 Tenn. 561, 292 S.W.2d 771 (1956).

Thus we hold that there are no grounds asserted by the appellants for the maintenance of a quo warranto action, and the first assignment of error must be overruled. However, the principal issues that the appellants seek to litigate are justiciable controversies in a declaratory judgment action, and will be treated as though plead as a part of the declaratory judgment action, although, in fact, they are recited by the pleader in his action sounding in quo warranto.

"Thus if the bill makes out a case for relief, any want of formality, or any misnomer of the bill, or any eccentricity of phraseology will not defeat the complainant's right of relief on the facts alleged and proved."

Gibson's Suits in Chancery, 5th Ed., § 52, p. 65.

Appellants make no contention in this Court with respect to the effect of T.C.A. §§ 67–605, 67–633 and 67–616 upon the County Assessor's duties or conflicts between said sections and other sections of Title 67, T.C.A. By Chapter 226 of the Public Acts of 1973, the Legislature repealed Chapter 6 of Title 67 and substituted therefor a new Chapter, codified as Sections 67–601 through 67–648. It appears that all questions in the original bill relating to the former sections of Chapter 6 have been cured by the 1973 Chapter.

Appellants contend that T.C.A. § 67–1718 violates the Separation of Powers doctrine embodied in Article 2, Sections 1 and 2, Constitution of Tennessee, in that said Section delegates legislative functions and responsibilities to the Executive Department of State government. More specifically, the contention is made that, ". . . the reappraisal of property is to be accomplished in accordance with standards, rules and regulations formulated by the Division of Property Assessments and approved by the State Board of Equalization. Nowhere are there any legislative standards or criteria for such rules and regulations."

A brief reference to the background of the legislation under attack is appropriate. In 1966, the Legislature, in extraordinary session, created a Tax Study Commission composed of 25 members, 2 members from the House, 2 members from the Senate, and 21 "knowledgeable and public spirited citizens" with at least 4 of said 21 members to be from each of the Grand Divisions of the State. The Commission was charged with the purpose of "making a thorough examination of ad valorem property tax throughout the State, and its administration, and the maintenance of an adequate revenue structure for the local subdivisions of the State." Chapter 4, Public Acts 1965, Extraordinary Session, effective date April 7, 1966. We take judicial knowledge that one of the results of the study and report made by said Tax

Commission was the enactment of Chapter 326, Public Acts 1967. The preamble and first section of said Act is as follows:

"Whereas, there has been found to exist great inequalities in the assessments of individual owners of property in most of the counties of the State of Tennessee, so that the reported median assessment ratio cannot be relied upon as a guide to any common level of assessments within the county and the median assessment ratios themselves vary widely among the various counties; and

Whereas, the equality and uniformity of assessment required by the Constitution cannot be completely and fairly achieved without reappraisal and revaluation of property;

*Be it enacted by the General Assembly of the State of Tennessee:*

Section 1. There shall be made as promptly as possible a reappraisal or revaluation of all real property for taxation in every county and city of Tennessee which has not had such reappraisal subsequent to January 1, 1965, unless the State Board of Equalization shall determine that reappraisal is unnecessary for a particular county. There shall also be a reappraisal or revaluation of all personal property or classes of personal property which the State Board of Equalization shall determine requires reappraisal to conform to legal standards. The assessment rolls shall be prepared and property shall be reappraised, including ownership mapping, in every city and county, in accordance with standards, rules and regulations formulated by the Division of Property Assessments and approved by the State Board of Equalization. State funds shall not be obligated or advanced toward the cost of any reappraisal which is not made in such manner and according to such standards as shall be approved by the State Board of Equalization. There shall also be a reappraisal or revaluation of all property assessed by the Public Service Commission. The State Board of Equalization is authorized and directed to establish rules and procedures for the appraisal of localized properties, and the Public Service Commission is hereby authorized and directed to enter into contracts or to make such arrangements as are necessary for the competent appraisal of all real estate and tangible property of such public utilities located in each of the ninety-five (95) counties of Tennessee, said appraisals to be made in an orderly manner over the next five (5) years concurrently with the reappraisal of locally assessed properties."

Section 1 of said Act is codified as T.C. A. § 67–1718. By Chapter 773, Public Acts of 1972, (8) years was substituted for (5) years and, as so amended, is the section under constitutional attack. In the preamble to said Act the Legislature recognized a condition in this State of inequality and lack of uniformity in the assessment of property contrary to the mandate of our Constitution, and determined that reappraisal and ownership mapping was a necessary step to remedy that state of affairs.

However, a careful study of every legislative enactment from 1967 to date, falling within the purview of the first 17 chapters of Title 67 T.C.A. is necessary for a proper understanding of the legislative scheme to bring about equality of taxation in the ninety-five counties of Tennessee and perpetuate that equality from year to year. It would unnecessarily prolong this opinion to recite a chronology of said Acts. Suffice it to say that Chapters 2, 6, and 17 of Title 67 T.C.A. must be read in pari materia with T.C.A. § 67–1718 to determine whether or not there is any merit to the contention advanced by appellants, that "nowhere" has the Legislature provided standards or criteria for such rules and regulations. Specifically, T.C.A. § 67–606 (a revision of T.C.A. § 67–605 by Public Acts of 1973, Chapter 226, Section 6) provides the basis for valuation of real property, and also personal property. Said Section requires that Assessors shall be guided by and follow the instructions of the appropriate assessment manuals issued by the State

Division of Property Assessments, and approved by the State Board of Equalization; that such manuals shall provide for consideration of eight specific factors in determining the value of real property. After providing four factors to be considered in determining the value of personal property, the next paragraph of said statute declares:

"It is the legislative intent hereby declared that no appraisal hereunder shall be influenced by inflated values resulting from speculative purchases in particular areas in anticipation of uncertain future real estate markets; but all property of every kind shall be appraised according to its sound, intrinsic and immediate economic value which shall be ascertained in accordance with such official assessment manuals as may be promulgated and issued by the state division of property assessments and approved by the state board of equalization pursuant to law."

The factors that must be given consideration in the assessment manuals are:

"(1) location;

(2) current use;

(3) whether income bearing or nonincome bearing;

(4) zoning restrictions on use;

(5) legal restrictions on use;

(6) availability of water, electricity, gas, sewers, street lighting, and other municipal services;

(7) natural productivity of the soil, except that the value of growing crops shall not be added to the value of the land; and

(8) all other factors and evidences of values generally recognized by appraisers as bearing on the sound, intrinsic and immediate economic value at the time of assessment."

T.C.A. § 67–207, § 67–208, § 67–232, and other sections of Title 67 too numerous to detail, further implement and provide guidance and direction for the orderly reappraisal of property state-wide. It is appropriate to observe, at this point, that the work product of C–L–T, or any other organization employed to assist a local tax assessor, is nothing more than a recommendation to the tax assessor and the County Board of Equalization, and is advisory only. The final decision, as to valuation, shall be made by the tax assessor and the Board of Equalization. See T.C.A. § 67–1706.

In Department of Public Welfare v. National Help "U" Ass'n et al., 197 Tenn. 8, 270 S.W.2d 337 (1954), Justice Burnett, writing for the Court, adopted the following statement from 11 Am.Jur., Constitutional Law, Section 240, page 955:

"The general principle governing the conditions under which the power to make rules and regulations may be delegated has been stated as follows: A legislature, in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose."

The Legislature, clearly acting within its jurisdiction to regulate and equalize the taxation of property, has provided administrative agencies with standards, criteria and definite limits within which rules and regulations and assessment manuals are to be promulgated. Appellants' contention that § 67–1718 T.C.A. delegates functions to the executive department in violation of the Separation of Powers doctrine is without merit.

Next, it is said that the statute does not apply equally to all counties of the state, contrary to Article XI, Section 8 of the Constitution of Tennessee, and the 5th and

14th Amendments of the United States Constitution.

A unitary reading of this statutory scheme for property appraisal for taxation purposes compels the conclusion that adequate standards are provided within the limits of which the discretion of the Board of Equalization must be exercised. The discretion of that body, therefore, lies in its power to determine whether there exists within a given county an inequitable property assessment scheme. The learned Chancellor's opinion gave distinct recognition to the conditions which prompted the vesting of such discretion in the Board of Equalization.

"Prior to the enactment of the Reappraisal Statutes, a number of counties had been ignoring the laws pertaining to assessments, and in those counties some action was necessary, and the duty of seeing that the constitutional requirements, the duty of examining the methods used in the various counties, was delegated to the State Board of Equalization. In those counties where proper appraisals and assessments had been made, no action was necessary, in all others it was mandatory."

The effect of T.C.A. § 67–1718 is to presume conclusively that cities and counties undertaking property reappraisals subsequent to January 1, 1965, have fulfilled the requirement of equality in assessment. As to all others, the Board of Equalization is empowered to ascertain whether such is the case, and to command reappraisal where the requirement is unfulfilled. That an administrative agency may constitutionally be delegated the authority to determine whether a state of facts exists which calls into operation a mandatory statute is a firmly established proposition in Tennessee. Lobelville Special School District v. McCanless, 214 Tenn. 460, 464, 381 S.W.2d 273 (1964); Richardson v. Reese, 165 Tenn. 661, 667, 57 S.W.2d 797 (1933); Leeper v. State, 103 Tenn. 500, 526, 53 S. W.2d 962 (1899).

Again, when read in pari materia with the relevant statutes in Title 67 T.C.A., it is apparent that the Legislature properly granted to the State Board of Equalization the discretion to exempt from reappraisal any county whose valuations of property and assessment procedures currently met the standards and criteria declared by the Legislature in said Title. Appellants' contention to the contrary is without merit and we hold that the reappraisal statutes, of which T.C.A. § 67–1718 is a part, are constitutional.

■ Appellants assign as a third error the holding of the learned Chancellor that the Knox County Quarterly Court was the proper body to enter contracts for the reappraisal of real property under T.C.A. §§ 67–1718 through 67–1722.

T.C.A. § 67–1719 reads, in pertinent part:

*"Financial reappraisal and ownership mapping.*—The cost of reappraisal and ownership mapping in each city and county shall be financed by a grant from the state of Tennessee to the county of one-half (½) the amount of said cost and by a loan by the state to the county of the balance of the cost, repayable in annual instalments over a ten (10) year period. In addition to any other contract which may be required, there shall be a contract signed by the county judge or chairman, acting with the approval of the county legislative body, and by the representative of the state board of equalization for repayment on specified dates of the proportion of the cost loaned, and interest thereon at an annual rate of two per cent (2%)."

It is the appellants' essential contention that § 67–1719 contemplates that the Knox County Board of Commissioners would execute reappraisal contracts. Such a contention is met headlong by the elemental fact that the statute is one of general application, affecting all counties in Tennessee. Therefore, the Legislature must be deemed to have intended the plan workable

in all counties, and cannot be held to have established such a plan with specific reference to one of two counties in the State with dual governmental units.

■ Appellants also contend that the several Private Acts which established the powers of the Board of Commissioners as an administrative body conveyed authority broad enough to encompass what otherwise might be termed legislative functions. Even if that be so, private acts are held to have been superseded as far as is necessary to give effect to a general statutory plan of statewide applicability. Trotter v. City of Maryville, 191 Tenn. 510, 235 S. W.2d 13, 18 (1950); State ex rel. Weaver v. City of Knoxville, 182 Tenn. 510, 188 S.W.2d 329, 330 (1945).

We are of the opinion that the foregoing principle applies as well to negate the effort to urge a construction of a special act which would call into question the meaning of a general act, applicable to all counties. If the Legislature had intended to confer reappraisal authority upon the administrative body of Knox County, they would have done so. We cannot presume to add to the powers of that body by adopting a statutory construction which would have the effect of injecting conflict into the general law or of reading into that law an exception in the case of counties in which the functions of government are executed by both quarterly courts and county commissioners.

Further, as ably argued in the brief of counsel for appellees, there is ample precedential and factual basis for rejecting appellants' challenge through the application of the doctrines of estoppel and laches. Because of the interpretation we give to T.C.A. § 67–1719, however, it is unnecessary to rest our decision on that ground; indeed, we do not do so.

■ We hold that the reappraisal statutes, T.C.A. §§ 67–1718 through 67–1722, contemplate that the performance of the duties thereby imposed on the counties of Tennessee shall be undertaken by the legislative bodies of the counties. Those legislative bodies, under T.C.A. § 5–528, are the quarterly courts. Our holding is based upon the necessity of the general application of the statute in question, the natural implication of the language of the statute that the county judge or chairman would execute any necessary contract, and the inference from T.C.A. § 67–1706 that the "governing" (i. e., legislative) body has the responsibility of contracting on behalf of the county in property assessment matters.

As their fourth assignment of error, appellants urge that the Knox County Chancery Court erred in holding that it did not have jurisdiction to review the manner in which the County Board of Equalization and the State Board of Equalization carry out their official duties. The learned Chancellor dealt with this contention of appellants:

"The next question presented in the Bill of Complaint is the allegation by the Property Assessor for Knox County 'that he has been advised, by a large number of reputable landowners and citizens of Knox County, that the Defendant, Cole-Layer-Trumble Company, has failed to follow and adhere to the appropriate statutes of the State of Tennessee with regard to real property appraisals and has failed to follow and adhere to the standards, rules and regulations formulated and adopted by the Tennessee Division of Property Assessments and approved by the Tennessee Board of Equalization ———,'

While I am of the opinion that this is a question for the Board of Equalization, if this Court did have jurisdiction to review the manner in which appraisals and/or assessments are being made, the above statement and legal conclusion is insufficient to justify an evidentiary hearing."

The Chancellor held that the Knox County Chancery Court had no jurisdiction to hear such a complaint.

Counsel for appellants seeks to distinguish this Court's decisions commanding the exhaustion of administrative remedies by an aggrieved taxpayer before he is granted access to the courts for review. See, e. g., Elliott v. Equalization Board, 213 Tenn. 33, 37–38, 372 S.W.2d 181 (1963); Biltmore Hotel Court, Inc. v. City of Berry Hill, 216 Tenn. 62, 80, 390 S.W. 2d 223 (1965). It is argued that where the complaint attacks the constitutional validity of delegated administrative authority, the administrative review process is of no comfort to an aggrieved taxpayer because it presumes the validity of the appraisal program. We need not reach the question presented by appellants' argument, inasmuch as we have held T.C.A. § 67–1718 to be without constitutional defect.

After a reappraisal program has been completed, the duties of assessors, county boards and the State Board of Equalization are prescribed in T.C.A. § 67–1721 with the object of achieving equality and uniformity of assessment, statewide. An aggrieved taxpayer has the administrative reviews provided by T.C.A. § 67–801 et seq. and T.C.A. § 67–821 et seq., after which he may seek judicial review. Appellants have no standing for judicial review in anticipation of the manner in which these administrative agencies will perform their duties.

The judgment of the Chancery Court of Knox County is affirmed, at the cost of appellants.

DYER, C. J., and CHATTIN and Mc-CANLESS, JJ., concur.

LEECH, Special Justice, not participating.