**STATE of Tennessee, By W. B. LOCKERT, Jr., D. A., Plaintiff-Appellant,**

v.

**Charles Korbett KNOTT, Defendant-Appellee.**

Supreme Court of Tennessee.

April 5, 1982.

Jeanne Crowley Casstevens, Asst. Atty. Gen., Nashville, for plaintiff-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

Thomas N. Bateman and Riley C. Darnell, Clarksville, for defendant-appellee.

## OPINION

BROCK, Justice.

The issue presented is whether T.C.A., § 54–7–104 (formerly § 54–1004),[1] exempts the defendant from the requirement of the possession of a general equivalency diploma (GED) or a high school education to serve in the public office of road engineer for Stewart County.

The defendant, Charles Corbett Knott, has an eighth grade education and 14 years of experience as a road commissioner[2] and was the Stewart County Road Engineer from 1958 through 1960 and from 1962 through 1974. In the 1974 election, Mr. Knott was defeated by Douglas Crockarell. In the 1978 election, Mr. Knott regained his position as road engineer by receiving approximately 2,000 votes (70% of the votes cast) and this *quo warranto* action was filed against him to test his title to the office.

In 1974 the legislature enacted the County Uniform Road Law in order to improve the rural road system throughout the state. Extensive data were gathered by the House Committee on Rural Roads of the 88th General Assembly and by the subcommittee of the Senate Highway Planning Development and Safety Committee. The information collected by these committees became the basis for the Uniform Highway Law. A 5 year plan which provided additional money for rural road work as well as competent management in the highway departments was developed. The bill provided that the position of road engineer was to be upgraded; the legislators sought to improve and upgrade the roads program by establishing minimum standards for persons seeking to hold that position. This upgrading provided that a high school diploma or its equivalent was the absolute minimum required to hold the position. No doubt to assure passage of the bill, the legislators protected the incumbents by granting them exemption from the educational and experience requirements of the bill. Such a compromise enabled needed changes to be made in the rural road program without disturbing those incumbents in office. This narrow exception was extended not only to incumbents but also to those candidates qualifying in the 1974 election, thereby assuring that all those persons elected in the 1974 election should start on an equal footing. The issue before the Court is whether the loss of an election by a 1974 incumbent removes the protection of the exemption provided by this "grandfather" clause.

As part of the defendant's efforts to qualify prior to the August, 1978 election, a GED diploma was filed with the County Court Clerk which bore the name of Selmer High School, Selmer, Tennessee, and stated that the defendant had satisfied the requirements of the General Educational Development Program. The diploma was issued upon the certification of school officials of McNairy County including Elgin Howard, the Superintendent of Schools, Tony Meeks, the Chairman of the Board of Education, and Wayne Henry, Principal, Selmer High School. The diploma purported to have been based on the results of the test taken at Jackson State Community College at Jackson, Tennessee. An investigation by the Stewart County District Attorney's office revealed that the defendant never took the equivalency test given at Jackson State. In addition, at the time the defendant supposedly took the exam and the GED was issued, there was no such entity as Selmer High School. The defendant claims that his only involvement in an attempt to secure a GED was to call some unidentified person in state government in Nashville at which time he described his need for a GED, and the person responded by stating "Well, we will see what we can do to help you out on it." Sometime later, the GED just appeared in the defendant's

---

1. *See* Appendix.

2. T.C.A., § 54 7 103, defines "Chief Administrative Officer" as follows:

 "For purposes of this chapter 'chief administrative officer' shall be defined as a county road superintendent, county road supervisor, director of public works, county engineer, or similar county highway official either elected or appointed pursuant to the provisions of any general or private act of this state."

mailbox in a plain brown, unstamped envelope, not addressed to anyone, and bearing no return address.

On December 19, 1978, the Commissioner of the Tennessee Department of Education raised a question regarding the authenticity of the diploma and asked that a hearing be held so that the defendant could have an opportunity to respond. A hearing was scheduled. The defendant, however, instead of attending, sent a note that he was ill and returned the GED diploma to the Department of Education.

On August 17, 1979, this *quo warranto* action was filed challenging the right of the defendant to hold the office of Stewart County Road Engineer without having obtained a valid GED diploma or high school education. At trial, the defendant relied upon the provisions of T.C.A., § 54–7–104, which state that "the provisions of this subsection shall not apply to any chief administrative officer incumbent in office on April 5, 1974 . . . ." Since the defendant had been an incumbent in office on April 5, 1974, he asserts that he has an exemption in perpetuity from the educational requirements established by T.C.A., § 54–7–104. The Judge of the Circuit Court for Stewart County upheld the defendant's position. This appeal followed.

■ On appeal, the defendant contends that the suit was not properly brought pursuant to T.C.A., § 23–2801(1)[3] and T.C.A., § 23–2809.[4] This action was brought by the District Attorney General as well as the Governor and the Attorney General of Tennessee. The latter two officials were not necessary parties, but the surplusage was harmless. *See,* T.R.C.P., Rule 21.

■ The defendant also asserts that the trial court was without jurisdiction to

hear this matter. He argues that when the Highway Committee of the Quarterly Court certified that he was qualified, as it was empowered to do by the legislature, it was doing so in a legislative capacity and that such acts done in a legislative capacity are not reviewable by the judiciary under the separation of powers doctrine. The defendant has relied exclusively upon the provisions of T.C.A., § 54–7–104, that the Highway Committee shall certify a candidate's qualifications. The defendant, however, has overlooked the provisions of T.C.A., § 29–35–101, which specifically provide that "an action lies in the name of the state . . . whenever any person unlawfully holds or exercises any public office or franchise within this state." It is well settled that a *quo warranto* action is a proper vehicle to challenge the qualifications of an elected official to hold the office to which he was elected. *See State ex rel. Dye v. Rawls,* Tenn., 573 S.W.2d 159, 160 (1978).

The defendant's jurisdictional claims on appeal are without merit.

■■ The obligation of a court in construing a statute is to give effect to the statutory purpose. When the proper application of a statute is not entirely clear, the first inquiry is to ascertain the general legislative intent.

■ In examining the legislative history of this act, there is nothing in the proceedings to indicate that the legislators specifically anticipated the problem in the instant case, i.e., the situation in which a 1974 incumbent would fail to be re-elected and later seek to rely upon his previous "incumbent" status to exempt him from the educational requirements. It is, however, the duty of the Court to ascertain, if possible,

---

3. T.C.A., § 23 2801, has been renumbered as T.C.A., § 29 35 ·101, and provides:

 "*Grounds for action.*—An action lies in the name of the state against the person or corporation offending, in the following cases:

 "(1) Whenever any person unlawfully holds or exercises any public office or franchise within this state, or any office in any corporation created by the laws of this state;
 * * *"

4. T.C.A., § 23–2809, has been renumbered as T.C.A., § 29–35–109, and provides:

 "*Officers entitled to bring suit.*—The suit is brought by the attorney general for the district or county, when directed so to do by the general assembly, or by the governor and attorney general of the state concurring."

and give effect to the legislature's reasonable intent, viewing the statute as a whole and in light of its general purpose. *City of Lenoir v. State ex rel. City of Loudon,* Tenn., 571 S.W.2d 297, 299 (1978). In giving effect to the legislative intent, the Court looks to the general purpose to be accomplished by the legislation. *Tidwell v. Collins,* Tenn., 522 S.W.2d 674, 676 (1975). A construction which frustrates the statute's objective should be avoided.

■ The intent of the legislature was to upgrade the roads program and as a part of that endeavor to establish minimum standards for persons seeking to hold the office of road engineer. A very narrow exception to the upgraded qualifications was permitted; the road engineers who were incumbents on April 5, 1974, and those candidates qualifying in the 1974 election were relieved of the responsibility of obtaining a GED. Such exceptions, however, are to be strictly construed. *Trice v. McGill,* 158 Tenn. 394, 398, 13 S.W.2d 49 (Tenn.1929). *State ex rel. Walls v. Cotter,* 175 Tenn. 92, 132 S.W.2d 210 (1939).

The structure of the statute enables the Court to interpret the legislative intent of the exemption language. T.C.A., § 54–7–104(a), provides that the goal of the legislature was to provide that in no event shall the chief administrative officer have less than a high school education or a GED, with the narrow exception above mentioned. T.C.A., § 54–7–104(b), clarifies the exception by stating that an incumbent shall be able to succeed himself in office without limitation as to the number of terms. So long as an incumbent remains in office he is exempt from the new educational requirements. The defendant relies heavily upon the exact language of the exemption which states that "the provisions of this subsection shall not apply to any chief administrative officer incumbent in office on April 5, 1974." Since the defendant was an incumbent on April 5, 1974, he argues that he has protection from the educational requirements in perpetuity. If the defendant's interpretation of the statute were to be accepted, it would mean that a person who held the position of chief administrative officer in 1974 or merely qualified for such a position in the 1974 election would always be qualified to seek and hold the position even though he did not meet the minimum educational requirements. To ignore the minimum standards under the law and allow such a result would be in complete derogation of this statute; for the upgrading of this position could not be accomplished as long as a large body of persons would not be required to meet the minimum standards.

The legislative evolution of the exception language of T.C.A., § 54–7–104, is also instructive. House Resolution No. 62, passed on May 3, 1973, contained the proposed act. It required that "a candidate must graduate from an accredited school of engineering with at least two years' experience in highway construction or maintenance or a related field and be licensed to practice engineering in Tennessee; or shall have at least 4 years' experience in a supervisory capacity in highway construction or maintenance or a related field; or a combination of education and experience equivalent to either of the above." Section 2 provided that "any incumbent chief administrator on the effective date of this act with less than 4 years' experience shall be eligible to *succeed himself.*" (Emphasis added.) This provision acknowledged that some incumbents would be unable to meet the experience and education requirements of the act and, therefore, would be allowed to succeed themselves without satisfying the new requirements. House Bill No. 1903 replaced the proposed act. Section 3 of House Bill No. 1903 contained the same experience and education requirements as stated above, but added a proviso that "in no event shall the chief administrative officer have less than a high school education or a GED." In addition, the succession clause was clarified to read that "any incumbent chief administrative officer on the effective date of this act shall be able to *succeed himself* in office without limitation as to the number of terms." (Emphasis added.) Such provision clarified that not only was the incumbent able to succeed himself in office but he was

able to continue in office without limitation as to the number of terms. During the final reading of the bill, amendment No. 1 was adopted which provided that "the provisions of this subsection shall not apply to any chief administrative officer incumbent in office on the effective date of this act or to any candidate for any such office qualifying for or being elected to any such office in 1974." Such language provided an additional clarification of the exception provision to assure that all parties running in 1974 were subjected to the same qualifications. Therefore, the incumbent and the other candidates were declared exempt from satisfying the requirements.

However, only those persons who secured elective positions in 1974 were then able to rely upon T.C.A., § 54–7–104(b), which allowed them to succeed themselves in office without limitation as to the number of terms. If the legislature meant to grant perpetual immunity to all persons holding the office of road commissioner on April 4, 1974, without regard to any breaks in their tenure, the addition of subsection (b) would have been superfluous, because these individuals would have had the right to succeed themselves anyway. The addition of subsection (b) clearly indicates that only those individuals who succeeded themselves could claim that they fell under the exemption.

 The legislative history, the statute's wording and structure, and the conditions existing at the time of this act's passage, all indicate that the legislature did not intend that individuals in the circumstances of the defendant should be entitled to the benefit of the educational exemption. We hold that the defendant is not entitled, under T.C.A., § 54–7–104, to serve in the office of road engineer without having obtained a GED or a high school diploma. The decision of the Stewart County Circuit Court is reversed and this cause is remanded for appropriate further proceedings consistent with this opinion.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.

APPENDIX

T.C.A., § 54–7–104:

"*Qualifications of chief administrative officer—Incumbent.*—(a) In each county of the state, in order to qualify for the office of the chief administrative officer of the county or metropolitan government departments which build and maintain the roads of the county, a person shall be a graduate of an accredited school of engineering, with at least two (2) years experience in highway construction or maintenance or a related field and/or be licensed to practice engineering in Tennessee; or shall have had at least four (4) years experience in a supervisory capacity in highway construction or maintenance or a related field; or a combination of education and experience equivalent to either of the above, as evidenced by affidavits filed with the appointing authority or with the highway committee of the county legislative body or other governing body when the chief administrator is an elected official. In no event shall the chief administrative officer have less than a high school education or a general equivalency diploma (GED). In the case of elected officials, the highway committee of the county legislative body or other governing body shall certify to the county election commission that a candidate's qualifications are acceptable prior to the candidate's name being placed on the ballot. The provisions of this subsection shall not apply to any chief administrative officer incumbent in office on April 5, 1974, or to any candidate for any such office qualifying for or being elected to any such office in 1974. The provisions of this chapter shall not apply to any chief administrative officer incumbent in office on February 6, 1976, in counties having a population of not less than fifty-six thousand, two hundred (56,200) nor more than fifty-six thousand, three hundred (56,300) according to the 1970 federal census or any subsequent federal census; furthermore, such incumbent officer may succeed himself in office. The provisions of this section shall not apply to

counties having a population of not less than six thousand seven hundred (6,700) nor more than six thousand seven hundred fifty (6,750) according to the 1970 federal census or any subsequent federal census.

"In counties having the following populations according to the 1970 federal census, or any subsequent federal census:

Not less than 30,400 nor more than 30,500;

Not less than 12,350 nor more than 12,400;

Not less than 8,100 nor more than 8,400;

Not less than 6,500 nor more than 6,700;

the sole educational and/or experience qualifications for the office of the chief administrative officer of the county or metropolitan government departments which build and maintain the roads of a county, shall be a high school education or general equivalency diploma (GED).

"In counties of this state having a population of not less than seventeen thousand three hundred fifty (17,350) nor more than eighteen thousand (18,000) according to the 1970 U.S. census of population or any subsequent federal census, the sole educational and/or experience qualification for the office of the chief administrative officer of the county or metropolitan government departments which build and maintain the roads of a county, shall be a minimum of ten (10) years of experience in construction and maintenance of a county highway system.

"(b) Any incumbent chief administrative officer on April 5, 1974, shall be able to succeed himself in office without limitation as to the number of terms." .