KNOX COUNTY, ex rel. Dwight KESSEL, County Executive, Plaintiff–Appellant,

v.

LENOIR CITY, TENNESSEE; Lenoir City Utilities Board, Robert S. McCurry, Alice Clayton, Timothy Denton, William Cheatham, Thomas McNabb, Idus Conner and Gerald Hamby, Defendants–Appellees.

Supreme Court of Tennessee, at Knoxville.

July 27, 1992.

Michael S. Ruble, Deputy Law Director, Knoxville, for plaintiff-appellant.

Robert B. Littleton, Nashville, Terry Vann, Alfred L. Hathcock, Jr., Robert G. Hinton, Lenoir City, for defendants-appellees.

## OPINION

DAUGHTREY, Justice.

In this appeal, we are asked to declare unconstitutional a private act passed in 1970 that governs distribution of tax-equivalent payments on property owned by the Lenoir City Utilities Board. The utility provides electric service both in Loudon County (where Lenoir City is located) and in portions of adjacent Knox County. Under the terms of Chapter 205 of the Private Acts of 1970, the entire amount of the tax-equivalent payments assessed to the utility is paid to the municipality of Lenoir City, even though some of the property giving rise to the payments is located in Knox County.

Seeking to share in the distribution of these payments, Knox County brought suit for a declaratory judgment, claiming that Chapter 205 of the Private Acts of 1970 violates Article XI, Section 8 of the Tennessee Constitution. That provision of the state constitution reads as follows:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general law of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law....

The chancellor held that Chapter 205 is constitutional, and the plaintiff appealed. We agree with the chancellor's decision and affirm.

■ We begin our analysis with the firmly established rule that in order for the provisions of Article XI, Section 8 to come into play, the local act under attack must contravene some general law that has mandatory, statewide application. *Leech v. Wayne County,* 588 S.W.2d 270, 273 (Tenn. 1979). Hence, the specific question before us is whether Chapter 205 conflicts with a provision of the current tax equivalents statute that has mandatory, statewide application.

The 1969 Municipal Electric System Tax Equivalent Law, in effect at the time Chapter 205 was adopted, specifically authorized the distribution of tax equivalents pursuant to private acts. A section of that 1969 statute, now superseded, provided as follows:

> Nothing in this [statute] shall be construed to change or amend in any way any private act as now or hereafter enacted which provides for payments in lieu of local taxes on the electric system or electric operations of any municipality to which such act relates, and such private acts as from time to time amended shall remain in full force and effect notwithstanding the provisions hereof.

T.C.A. § 7-52-306 (1969). Hence, insofar as Chapter 205 may have conflicted with the 1969 tax equivalents law, it was not subject to constitutional challenge under Article XI, Section 8 because, by its own terms, the 1969 statute was not intended to have mandatory, statewide application.

■ By 1987, however, the Tennessee General Assembly had apparently decided that there should be some degree of uniformity created with regard to tax-equivalent payments. As a result, it passed the "Municipal Electric System Tax Equivalent Law of 1987," Acts 1987, Ch. 84, codified as T.C.A. §§ 7-52-301—310. Knox County now argues that this statute is a "general law" for state constitutional purposes and that Chapter 205, affecting only the distri-

bution of payments to Lenoir City, is therefore unconstitutional under Article XI, Section 8, because these payments are not distributed in compliance with the general law.

Superficially, at least, this argument appears to have merit. In the purpose and construction section of the 1987 Act, the stated purpose of the new legislation is "to provide the complete law of this state with respect to payments in lieu of taxes on the property and operations of all [municipal] electric systems...." T.C.A. § 7–52–302(a). This same section also reflects a legislative intention to "repeal the specific provisions of any private act or home rule charter or metropolitan government charter ... relating to payments in lieu of taxes." *Id.* But a close reading of the full provision reveals that the term "complete law" does not preclude the validity of all private acts affecting distribution of payments. Rather, the intent to repeal such private acts is qualified by § 7–52–302(a), as follows:

> (a) The purpose of this part is to provide the complete law of this State with respect to payments in lieu of taxes on the property and operations of all electric systems owned and operated by incorporated cities or towns, by counties, and by metropolitan governments, and *to repeal* the specific provisions of any private act or home rule charter or metropolitan government charter, or any part thereof, relating to payments in lieu of taxes including *certain provisions relating to the distribution of any such payments, but not to repeal any other provisions of such private acts or charters or parts thereof.*

T.C.A. § 7–52–302(a) (emphasis added).

The statutory provisions that follow address two questions: how much is to be paid in lieu of taxes (calculation of payments) and to whom the payments must be distributed when more than one taxing jurisdiction is involved (allocation of payments). The formulas for calculation of payments in the 1987 Act differ somewhat from those in the superseded statute; they now appear in T.C.A. § 7–52–304. Except for a new provision in § 7–52–305, regarding the effect of amendatory contracts tendered to a municipality by the Tennessee Valley Authority, the remaining substantive provisions of the 1987 Act govern distribution. It is these sections, therefore, that control the question of allocation of the tax equivalents in this case between Knox County and Lenoir City.

Most of the distribution provisions in the 1987 Act reflect a legislative intent to control the terms of calculation but to allow flexibility with regard to allocation. T.C.A. § 7–52–306, for example, permits competing taxing jurisdictions to "make and perform contracts for distribution among them of the aforementioned tax equivalent amounts." The parties to such contracts "may provide for ... distribution on any basis which is satisfactory to the contracting parties," but the contract must be "consistent in all respects with the [calculation] provisions of ... § 7–52–304." This section also validates all contracts and "established arrangements" [1] for distribution that were in existence on the effective date of the 1987 Act.

The next section, entitled "payments to taxing jurisdictions," sets out the prescribed statutory method for allocating payments between or among taxing jurisdictions in which electric service is provided by a utility. However, it applies only to the extent that there is no pre-existing "contract, established arrangement authorized or validated under § 7–52–306 ..., or distribution provisions of any *private act* or home rule or metropolitan government charter ..." T.C.A. § 7–52–307 (emphasis added).

Finally, after providing for "operations in adjacent states" in § 7–52–308, the 1987 Act addresses specifically the question of "distribution by private act or home rule or metropolitan government charter" in § 7–

---

1. An "established arrangement" is defined by § 7–52–306 as "one under which the municipality has made a distribution payment to another taxing jurisdiction by general understanding and the payment has been accepted by the taxing jurisdiction for the fiscal year or calendar year immediately preceding the fiscal year beginning July 1, 1987."

52–309. This section does have the effect of repealing the allocation provisions in private acts and charter provisions, but *only* those which "direct that the tax equivalent amount to be distributed to each taxing district is to be an amount arrived at by applying the current ad valorem tax rate in that district to the depreciated original cost of the electric system's tangible property...." We conclude that it was this qualified repealer provision to which the legislature had reference in § 7–52–302, when it stated an intent to repeal "certain provisions" of private acts affecting distribution, "but not to repeal any other provisions of such private acts." Because Chapter 205 does not utilize the formula proscribed in § 7–52–309, its validity is not affected by the repealer provision in this section.

Moreover, because none of the provisions in Chapter 205 conflicts with provisions of the 1987 Act, Chapter 205 is unaffected by the final section of the statute, T.C.A. § 7–52–310, which repeals those "parts of any private act ... in conflict herewith ... to the extent of such conflict...." This provision, like the others discussed above, demonstrates clearly that although the legislature intended to bring some uniformity to the tax-equivalent payment schemes, especially in the calculation of amounts to be paid, there was no intent to create a "general law" that imposes a mandatory, statewide method of distribution of payments. Indeed, in validating (and, to some extent, even encouraging) the existence of private acts, contracts, and "established arrangements" for the distribution of payments to competing jurisdictions, the General Assembly negated any intent to create a general law, for purposes of Article XI, Section 8. This conclusion is inescapable, not only from the wording of the 1987 Act but also from a review of the legislative history of its enactment. As the defendants point out in their brief on appeal, a question during debate in committee from a member of the House of Representatives concerning the effect of the new legislation on existing distribution practices drew this response from the House sponsor, Representative John Bragg: "It grandfathers in anything they're doing, and it also does not affect any distribution." Floor debate of House Bill 689 by the Tennessee House of Representatives (March 23, 1987).

We conclude that, regardless of its stated intent to provide the "complete law" of municipal utility tax equivalents, the 1987 Act specifically permits the allocation of payments among taxing jurisdictions to be established by means of a private act such as Chapter 205. We offer no opinion as to the fairness of the current, obviously one-sided arrangement contained in Chapter 205. We conclude only that if Knox County wishes to alter that arrangement, it will have to address its case to the legislature, rather than the courts.

The judgment of the trial court is affirmed. Costs are taxed to the appellant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

O'BRIEN, J., dissents. See separate opinion.

O'BRIEN, Justice, dissenting.

The complaint in this case was filed in 1989 by plaintiff, Knox County, ex rel., Dwight Kessel, County Executive, against Lenoir City and the Lenoir City Utilities Board as the supervisory board of the Municipal Electric Plant of Lenoir City. The action was for a declaratory judgment to determine the rights of Knox County to receive tax equivalent payments, pursuant to T.C.A. § 7–52–301 et seq. The bill specifically requested the chancery court to find and determine that Section 205 of the Private Acts passed by the General Assembly in the year 1970 to be unconstitutional and in violation of Article XI, § 8 and Article II, § 28 of the Tennessee Constitution. It was also requested that the Court find and determine that the Lenoir City Utilities Board and the Municipality of Lenoir City were liable to Knox County for past tax equivalent payments, and require defendants to comply with the terms of T.C.A. § 7–52–301, et seq., in reference to such payment.

Subsequently both parties filed motions for summary judgment. The motion of plaintiff was limited to a request that the Court find Chapter 205 of the Private Acts of 1970 to be in violation of Article XI, § 8 of the Tennessee Constitution. Plaintiff also filed a motion for leave to amend the complaint. The amended complaint prayed as alternative relief for a rule that property owned by Lenoir City Utilities Board in Knox County was subject to applicable county taxes. Prior to any action on the amended complaint the trial court sustained defendant's motion for summary judgment, finding that T.C.A. § 7–52–301, et seq., permitted the utilities to pay the in lieu of tax payments in accordance with a Private Act. The court ruled that Chapter 205 of the Private Acts of 1970 governed in lieu of tax payments by the Lenoir City Utilities Board and neither the statute nor the Private Act violated Article XI, § 8 of the Tennessee Constitution.

Plaintiff appealed the judgment to the Court of Appeals presenting one (1) issue, requesting review of the trial court's action in determining that Chapter 205 of the Private Acts of 1970 was constitutional. On motion of defendants, the Court of Appeals transferred the case to this Court pursuant to T.R.A.P. 17. The constitutionality of the statute being the only issue, it was properly transferred to this Court.

Plaintiff insists that Chapter 205 of the Private Acts of 1970 violates both Article XI, § 8 of the Constitution of the State of Tennessee and the general law set forth in T.C.A. § 7–52–301, et seq., captioned as the Municipal Electric System Tax Equivalent Law of 1987.

On the other hand, defendants argue that Chapter 205 of the Private Acts of 1970, pertaining to the distribution of payments made in lieu of taxes by Lenoir City's Electric System, does not contravene the tenets of the Municipal Electric System Tax Equivalent Law. They say that the General Assembly did not intend for the statute to have mandatory state-wide applicability as to all of its provisions.

It seems quite clear that the question of the constitutionality of Private Chapter 205 of 1970 has been rendered moot by the passage of the 1987 Tax Equivalent law.

Two of the most recent cases on the issue in this State are *City of Tullahoma v. Coffee County, Tennessee,* 328 F.2d 683 (6th Cir.1964), cert. denied, 379 U.S. 989, 85 S.Ct. 698, 13 L.Ed.2d 609 (1965); and *City of Shelbyville v. State ex rel. Bedford County,* 220 Tenn. 197, 415 S.W.2d 139 (1967). The *Tullahoma* case recites a lengthy history of the subject, beginning with the Tennessee Valley Authority Act of 1933, including Sec. 10, amended 1935 and Sec. 13, amended 1940. (16 U.S.C.A. §§ 831i and 831*l*). The court's analysis pinpoints the fourth paragraph of Sec. 13 of the Act, as amended in 1940. This paragraph provided:

"Nothing herein shall be construed to limit the authority of the Corporation in its contracts for the sale of power to municipalities, to permit or provide for the resale of power at rates which may include an amount to cover tax-equivalent payments to the municipality in lieu of State, county, and municipal taxes upon any distribution system or property owned by the municipality, or any agency thereof, *conditioned upon a proper distribution by the municipality of any amounts collected by it in lieu of State or county taxes upon any such distribution system or property; it being the intention of Congress that either the municipality or the State in which the municipality is situated shall provide for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality in lieu of State or county taxes upon any such distribution system or property.*" (Emphasis supplied).

The Sixth Circuit Court of Appeals concluded that by the enactment of the amendment the Congress simply expressed a general intention that there should be a proper distribution of tax equivalent payments made to the States and counties, but did not undertake to implement such intention by imposing duties to that effect either upon T.V.A., the States, or upon municipalities, leaving this matter exclusively to local

control or regulation. Such distribution would be determined exclusively by the State or by the municipality itself. In the absence of a provision for distribution, the municipality would be entitled to retain the entire fund representing tax-equivalent payments and no action would lie upon the part of the county to recover any part of such payments. *See City of Tullahoma* at 328 F.2d, 687. The Court declined to follow the decision of this Court in *Rutherford County v. City of Murfreesboro,* 205 Tenn. 362, 326 S.W.2d 653 (1959). In *City of Shelbyville v. State,* 220 Tenn. 197, 415 S.W.2d, 139, 142 (1967), this Court cited the *City of Tullahoma* case with approval to the effect that "[T]he law, as interpreted by the Federal Courts, is the TVA Act does not require cities make distribution under the 1940 amendment. Under this view, TVA has no duty with reference to the proper distribution of tax equivalents but such is determined exclusively by the states and municipalities." As a result, in the absence of any State regulation, between 1968 and 1970, at least eleven (11) Private Acts were enacted relating to these payments.[1]

In 1969 the Legislature passed Chapter 237 of the Public Acts of Tennessee, providing for tax-equivalent payments by municipalities operating an electric system and purchasing all or part of its power requirements for resale and distribution from the Tennessee Valley Authority. T.C.A. § 7–52–306 specifically provided that nothing in the Act should be construed *to change or amend in any way any Private Act then in effect or thereafter enacted providing for payments in lieu of local taxes on the electric system or electric operations of any municipality to which the Act related.* (Emphasis supplied). Any such Private Acts, as from time to time amended, were to remain in full force and effect notwithstanding the provisions of the Act. The following year Chapter 205 of the Private Acts was passed by the Legislature directing payment of all tax-equivalents into the general fund of Lenoir City to be

expended for municipal purposes determined by the governing body of the city. The Private Act ignored T.C.A. § 7–52–301, et seq., which provided tax-equivalents were to be computed and allocated among the taxing jurisdictions in which the municipality's electric system was located and in which such electric operations were conducted. The defendants did not pay, nor did plaintiffs assert any action to demand payment, of any tax-equivalent authorized or directed until this complaint was filed in 1989.

The 1987 Act is ambiguous in that some of its parts seem to be in conflict with others. In such a case it is the duty of the court in construing a statute to give effect to the statutory purpose. Tenn.Juris. Vol. 23, Statutes, Sec. 36. When the proper application of a statute is not entirely clear, the first inquiry is to ascertain the general legislative intent. *State ex rel. Lockert v. Knott,* 631 S.W.2d 124, 126 (Tenn.1982). *The prime purpose of statutory interpretation* is to ascertain and give effect to the legislative intent and all rules of construction yield to achieve this end. *State ex rel. Rector v. Wilkes,* 222 Tenn. 384, 436 S.W.2d 425, 427 (1968). Such intent must be derived from a reading of the statute in its entirety. *Coca Cola Bottling Co. United Inc. v. Woods,* 620 S.W.2d 473, 476 (Tenn.1981), including the caption of the Act. *See Dorrier v. Dark,* 537 S.W.2d 888, 892 (Tenn.1976).

The caption of Ch. No. 84, Pub.Acts 1987 is as follows:

AN ACT To *provide for payments in lieu of taxes on the property and operations of all electric systems owned and operated by incorporated cities or towns,* by counties, or by metropolitan governments; to authorize such incorporated cities or towns, counties, and metropolitan governments to contract as to the distribution of such payments among certain local taxing jurisdictions and validate any existing contracts for, or existing established arrangements for, distri-

---

1. Each of these Private Acts, with the exception of those involving the cities of Harriman and Rockwood in Roane County, and the cities of Loudon and Lenoir City in Loudon County, provided for tax equivalent distribution to the counties in which they were situated.

bution thereof; *to provide for distribution in the absence of contract or established arrangement; to provide for the repeal of all laws in conflict herewith including the parts of any private act or home rule or metropolitan government charter pertaining to payments in lieu of taxes including provisions relating to the distribution of any such payments;* to provide that this act is remedial in nature and shall be liberally construed; and to amend Tennessee Code Annotated, Title 7, Chapter 52, Part 3.

The Municipal Electric System Tax Equivalent Act of 1987 states in T.C.A. § 7–52–302, its purpose to provide the *complete law of this State* with respect to payments in lieu of taxes on the property and operations of *all* electric systems owned and operated by incorporated cities or towns, by counties, and by metropolitan governments, *and to repeal the specific provisions of any private act or home rule charter or metropolitan government charter, or any part thereof, relating to payments in lieu of taxes including certain provisions relating to the distribution of any such payments,* but not to repeal any other provisions of such private acts or charters or parts thereof. (Emphasis supplied).

Notwithstanding defendants argument to the contrary it is crystal clear that the 1987 Act does have mandatory statewide applicability as to all of its provisions. The Act not only authorizes, but *directs* payment to the taxing jurisdictions in which a municipality's electric plant in service is located and sets out in detail, the basis for such payments.

T.C.A. § 7–52–304 states in pertinent part the tax equivalents authorized and the conditions and limitations under which they are to be paid. The first paragraph of this section reads as follows:

**7–52–304. Tax equivalents authorized—Conditions and limitations.—** Notwithstanding any provision to the contrary appearing in § 7–34–115 or *§ 7–52–130 [repealed],* or in the provisions of any private act or home rule or metropolitan government chapter, every municipality *may* pay or cause to be paid from its electric system revenues for each fiscal year an amount for payments in lieu of taxes (hereinafter called "tax equivalents") on its electric system and electric operations which, in the judgment of the municipality's governing body after consultation with the supervisory body, shall represent the fair share of the cost of government properly to be borne thereby, subject however, to the following conditions and limitations:

Subsection (3) and (4) of Sec. 304 contain the following language:

(3) *The total amount to be paid as tax equivalents for each fiscal year shall be in lieu of all state, county, city and other local taxes or charges on the municipality's electric operations except as provided in subdivision (6) of this section. Accordingly, after initial determination of such total tax equivalent amount to be paid in the absence of any such taxes or charges, such total tax equivalent amount shall be reduced by the aggregate amount of such taxes or charges imposed for such fiscal year on the municipality's electric system or electric operations by or for the benefit of the respective taxing jurisdictions (including the municipality) in which the municipality's electric system is located and in which such electric operations are conducted, whether or not such taxes or other charges were imposed by the respective taxing jurisdictions receiving the benefit thereof. Any amount allocated to any such taxing jurisdiction other than municipality, as provided in § 7–52–306 or § 7–52–307, shall be reduced by the aggregate amount of any such taxes or charges imposed for that fiscal year for the benefit of that taxing jurisdiction.* Only the respective amounts remaining after the aforementioned allocated amounts have been so reduced shall be actually paid to the municipality and to such respective taxing jurisdictions:

(4) *The total amount to be paid as tax equivalents (including that to be paid for municipality and any other taxing*

*jurisdiction) for each fiscal year, determined in accordance with and subject to the provisions of this part,* shall be set forth in a resolution adopted by the municipality's governing body after consultation with the supervisory body, and the municipality's electric system shall pay to the municipality and any other taxing jurisdictions the amounts as provided in the resolution.

Implicit in the text of subsection (3) is the implication that if the tax equivalent is not paid by the municipality a tax may be imposed by the offended taxing jurisdiction. Thus a remedy is provided for failure to comply.

T.C.A. § 7–52–307—mandates that the municipality's governing body, in the resolution provided for in § 7–52–304(4) *shall direct* payment of the [tax equivalents] to the taxing jurisdictions in which its electric plant in service is located. The only exception being to the extent such tax equivalent payments [to the taxing jurisdictions] are otherwise provided for by contract, established arrangement, or distribution provisions of any private act or home rule or Metropolitan Government Charter.

No other reasonable construction can be given the Act. The rule is set out in *Anderson Fish & Oyster Company v. Olds,* 197 Tenn. 604, 277 S.W.2d 344, 345–46 (1955). [T]he legislative intent controls the construction of statutes. *Chicago & Southern Airlines Inc. v. Evans,* 192 Tenn. 218, 240 S.W.2d 249 (1951). The statute should be construed as a whole, giving effect to each word. *Tiger Creek Bus Line v. Tiger Creek Transportation Ass'n.,* 187 Tenn. 654, 216 S.W.2d 348 (1948). The court should and will assume that the Legislature used each word in the statute purposely and that the use of these words conveyed some intent and had a meaning and purpose. *Flowers v. Aetna Cas. & Surety Co.,* 186 Tenn. 603, 212 S.W.2d 595 (1948). In construing a statute the court should give it the construction which promotes the purpose and object of the Act. *Knoxtenn Theatres, Inc. v. Dance,* 186 Tenn. 114, 208 S.W.2d 536 (1948).

T.C.A. § 7–52–309 considers certain pre-existing distribution provisions contained in private acts, home rule or Metropolitan Government Charter for payment of tax equivalents to taxing districts. It provides for the repeal of those pre-existing distribution provisions in accordance with its direction and specifically holds that thereafter the municipalities *shall* allocate the total tax equivalent payment paid for each fiscal year, to *each taxing* jurisdiction *in accordance with the terms of the Act.*

T.C.A. § 7–52–310 contains the repealer section,

**Repeal of conflicting provisions—Ex**cept as herein otherwise expressly provided, all acts or parts of acts, including parts of any private act, or home rule, or metropolitan government charter, in conflict herewith are to the extent of such conflict herewith repealed.

It is irrefutable, that the Act, as stated in its caption, was intended to provide for the repeal of all conflicting laws, including the parts of any private act or home rule or metropolitan government charter pertaining to payments in lieu of taxes, including provisions relating to the distribution of any such payments.

Where the caption of an Act is unambiguous and susceptible of only one interpretation, it cannot be enlarged by construction to cover matters not set out therein. *State ex rel. Rector,* supra, p. 428.

It is equally certain that this Court is bound by the express statement of purpose contained in T.C.A. § 7–52–302.

Defendants suggest that the legislative history in the enactment of the statute somehow evinces an intent not to disturb the status quo existing prior to its passage.

If it were feasible to consider the history of this case as dispositive it would be necessary to take into account the transcript of the proceedings before various legislative committees and upon the House Floor:

**3 March 1987.** Senate State and Local Government Committee. [True transcript].

[Dunavant] Thank-you Mr. Chairman and gentlemen of the committee. This

bill comes as a result of a long-long study and discussion, compromise with the TML, the county services people, the association of utilities and the TN advisory Council on Intergovernmental Relations. What it does is it provides for uniform method of tax distribution to the various **levels of state government and it is not mandatory but** it is something that's been worked out. I'll be glad to go over it item by item if you like me to, but it does have all those endorsements. [Sen. Haynes] Sen. Dunavant, this changes what we have presently, obviously, and if so, who does it hurt? Its got to hurt somebody.

[Dunavant] Ahhh.... if the [garbled] is optional, I don't think it would hurt anybody. The hold harmless provision—there is a hold harmless provision in this in two different sections—Ahhh, so that there would be no harm done in case, ahhh, the taxing distribution were to be changed. If you want to get more specific on it, ahhh Dr. Harry Green is present and can answer more specific questions on that. [Dunavant to Green] Do you know anyone hurt. [Dunavant to committee] He knows no one that hurt, Mr. Chairman.

**10 March 1987.** House State and Local Government. [True transcript].

[Chairman Bragg] I have two bills that are identical, except one deals with the gas and the other deals with electricity. The gas, the one dealing with gas, number 151, I believe is on the gas. The situation is, this basically began, was started because of the situation of *electricity*. I explained that **there are** different formulas across Tennessee for payment in lieu of taxes on municipal owned systems. This has been worked out with the Municipal League, TN Valley Authority—and with work by the Advisory Commission of Intergovernmental Relations and I think that, **I know that, we're** in agreement that **it's a system** uniform across Tennessee for payment in lieu of taxes by local municipal, locally owned, gas systems. But leaves it to the local entity to determine the amount of money. It just **passes the payments of**

the years and I'd like to vote, **motion to move it on out.**

**18 March 1987.** HB # 689. Mr. Chairman Bragg addresses the Calendar Committee. [This is a true transcript]

Mr. Chairman, members of the Committee. I have two bills that [we] have been working on for about five years by the Tennessee Advisory Commission on Inter-government Relations. *We have finally worked out an agreement with the Tennessee Municipal League and TVA—for a separate, uniform method of determining payments in lieu of taxes on all municipally owned electric departments.* Everybody's agreed to it and it is the result of alot of hard work by alot of people—I would like to move it to the floor.

**23 March 1987**—House floor—Rep. Bragg moves to conform HB # 689 to SB 932—Rep. Bragg made the following speech, [true transcript]

Ms. Speaker, members of the house—this bill is the result of about 5 years work of the Advisory Committee on Inter–Governmental relations—composed of state officials, city officials, county officials and citizens. It offers a simple and uniform way for evaluating municipal owned electric departments—it holds city and counties harmless that there will be no less payments, but it also sets a amount of tax payments in lieu of taxes and, as I said, it has been agreed to by all parties concerned. It's really a (sic) pieces of, I call it landmark legislation, *to get everything simplified, across this state.* It's of great benefit to local governments, and Tennessee Valley Authority has been involved in the negotiations to work this bill out. I might add, it passed in the Senate on the Consent Calendar. (Emphasis supplied).

Factually, the foregoing comments do not conform to the actual contents of the subject Bills. The Caption to The Municipal Gas Company Bill, passed as Ch. 220 Acts of 1987, states,

AN ACT To provide for payments in lieu of taxes on the property and operations of all gas systems owned and operated

by incorporated cities or towns, by counties, or by metropolitan governments; to authorize such incorporated cities or towns, counties, and metropolitan governments to contract as to the distribution of such payments among certain local taxing jurisdictions and validate any existing contracts for, or existing established arrangements for, distribution thereof; to provide for distribution in the absence of contract or established arrangement; to provide for the repeal of all laws in conflict herewith including the parts of any private act or home rule or metropolitan government charter pertaining to payments in lieu of taxes *except for provisions relating to the distribution of any such payments;* to provide that this act is remedial in nature and shall be liberally construed; and to amend Tennessee Code Annotated, Title 7, Chapter 39.

The two Bills were filed by the same sponsors. The gas statute, "repeal[s] the specific provisions of any private act ... or any part thereof, relating to payments in lieu of taxes *except* for provisions relating to the distribution of any such payments." The Bill involving Electric Municipal Systems *include* provisions relating to the distribution of any such payments.

T.C.A. § 7–52–302. The Municipal Electric Plant Purpose—Construction statute "repeal[s] the specific provisions of any private act ... relating to payments in lieu of taxes *including certain provisions relating to the distribution of any such payments."* ...

It is appropriate to look to the two statutes to establish intent. *See Hart v. Reynolds, et al.,* 48 Tenn. 208, 217 (1870). The comparison in this case establishes beyond equivocation the intent of the legislature in the enactment of T.C.A. § 7–52–301, et seq.

It is the general rule that private acts are held to be superseded as far as is necessary to give effect to a general statutory plan of statewide applicability. *State ex rel. Strader v. Word,* 508 S.W.2d 539, 547 (Tenn.1974).

The language in the 1987 statute permits no other conclusion than its intent to prorate the properly calculated tax-equivalents among the taxing jurisdictions in accordance with its terms. The concluding part of the act specifically states that, except as expressly provided therein, all acts or parts of acts, including parts of any private act, or home rule, or metropolitan government charter, in conflict therewith are to the extent of such conflict repealed. Private Chapter 205 serves no other purpose than to distribute exclusively to Lenoir City the tax equivalent payments made by the Lenoir City Electric System. There is no doubt about its repeal.

The complaint prays for the payment of past tax equivalent payments, including penalties and interest. The record indicates that no effort was made on the part of Knox County to collect any tax-equivalent payment until the latter part of 1979. At that time there was simply an exchange of correspondence between the parties. The Public Acts of 1969 were in effect. T.C.A. § 7–52–306 specifically provided for the continued efficacy of any private act then in place *or therefore enacted* which provided for payments in lieu of taxes on the electric systems of municipalities. No further action was taken to enforce payment until approximately a year and a half after the enactment of the 1987 Tax–Equivalent Law. Until the passage of that Act the legal efficacy of Private Chapter 205 was debatable and subject to question. However, it was the law. It would be reasonable for the division of tax-equivalent payments to begin as of the effective date of the Tax Equivalent Act on 1 July 1987.

I dissent.